MARTIN L. RYAN, M. D., P. C., Respondent, v EDWARD ORRIS, Appellant. — Appeal from an order and judgment of the Supreme Court in favor of plaintiff, entered May 28, 1982 in Albany County, upon a decision of the court at Trial Term (Prior, Jr., J.), without a jury. Plaintiff, a professional corporation engaged in the practice of internal medicine, specializing in gastroenterol-

ogy, through its president, Dr. Ryan, interviewed various applicants as prospective affiliates and finally engaged defendant. Dr. Ryan claims that he informed defendant, at both of their preliminary meetings, that any employment contract would contain a restrictive covenant requiring the payment of one year's salary if defendant chose to leave plaintiff corporation and practice his profession in the Albany area. Defendant was hired in July, 1977. The letter of intent, which contained the proposed terms to be included in the later contract, included in "5" a provision that: "If you should leave the employ of the corporation, you will indemnify the corporation by payment of one year's salary if you continue to practice in the Albany, Rensselaer or Schenectady area. This figure should be adjusted relative to the length of the association. The corporation will indemnify you if you should leave the employ of the corporation." Through the negotiations of their attorneys, the restrictive covenant finally included in the contract reduced the amount of indemnification to be paid by defendant from "one year's salary" to $35,000, and the unlimited time period in the letter of intent was reduced to no indemnification if the termination occurred after two years' employment. Likewise, the area encompassed in the letter of intent was restricted to the Albany area only. Significantly, there was no provision for assessing the corporation damages for its premature breach of the employment contract. On or about July 1, 1977, defendant undertook his duties with the aid and assistance of Dr. Ryan until May 7, 1978, when defendant informed Dr. Ryan that he was seeking other affiliations. On May 22, 1978, defendant informed Dr. Ryan that he would be leaving the corporation for an affiliation in the same medical field with an Albany doctor. The termination was effective on May 27, 1978, but defendant continued to see Dr. Ryan's patients until June 9, 1978, at which time Dr. Ryan refused to permit defendant to perform any more services for the corporation. Defendant engaged in practice in Albany but failed to make the $35,000 indemnity payment to the corporation within 60 days, as required by the employment contract, or at any subsequent time. Plaintiff brought this action for damages for breach of contract, particularly the indemnity clause. Defendant counterclaimed for damages for breach of contract for involuntary termination. The trial court awarded a judgment in the amount of $35,000 plus interest to plaintiff, holding that the contract was fully understood and voluntarily entered into by the parties, that defendant voluntarily terminated the contract and waived any benefit due thereunder, and finally that the liquidated damages were not disproportionate to the harm caused to plaintiff and did not constitute a penalty. We agree with the determination of the trial court. At no time did defendant dispute plaintiff's allegations that defendant's termination was voluntary, except as a much later afterthought. Rather, defendant acknowledged his indemnity obligation to plaintiff corporation. Nor did defendant demand, pursuant to section 4 of the employment contract, 60 days' written notice or, alternatively, 60 days' salary. In this regard, it is defendant's contention that because he did not demand the 60-day written notice, he did not terminate the employment contract. However, this argument ignores Dr. Ryan's letter of May 27, 1978 wherein he waived his contract right to receive 60 days' written notice from defendant. Defendant's second argument is that Dr. Ryan testified in his examination before trial that between May 16 and May 22, 1978 he decided to terminate defendant. Even if that were so, it was never communicated to defendant and it was defendant himself, on May 22, 1978, who informed Dr. Ryan that he was terminating the contract. Therefore, the trial court correctly determined that defendant himself terminated the contract on May 22, 1978 when he, unaware of Dr. Ryan's desires, informed Dr. Ryan that he was terminating the contract of employment, and

its further finding that the termination was voluntary is also correct. In regard to the issue of liquidated damages, such a clause is enforceable when three conditions coexist. First, liquidation clauses are enforceable when the stipulated sum is not so grossly disproportionate to the probable anticipated loss as to actually be a penalty designed to induce performance, rather than a means to provide "just compensation" for losses (*Truck Rent-A-Center v Puritan Farms 2nd,* 41 NY2d 420, 425). Second, liquidated damage clauses are enforceable when the damages to be anticipated as resulting from the breach are uncertain in amount or difficult to prove, and third, there is an intent on the part of the parties to liquidate them in advance (5 Williston, Contracts [3d ed], § 769, p 640). At the time the contract herein was executed all three of these conditions coexisted. The record reveals that Dr. Ryan had built up a specialized practice of gastroenterology in the Albany area for over 20 years. Defendant was a stranger to the area. Considering the harm to Dr. Ryan's practice and the losses he would sustain by defendant's withdrawal from the corporation, the cost invested in training defendant and introducing him to the area and the similar costs to retrain defendant's substitute, the liquidated damages clause was particularly appropriate, for damages from breach of an employment contract are inherently incapable of accurate estimation, whether at the time of the contract's execution or after its breach (see *Karpinski v Ingrasci,* 28 NY2d 45). At the very least Dr. Ryan would be damaged to the extent of the value of defendant's performance, set by the parties at $35,000 for the first year. Furthermore, the amount of $35,000 was settled upon and negotiated through the attorneys for the parties. Lastly, contrary to defendant's contention, it is not that the damages "cannot be measured in monetary terms" that is required before liquidated damages are permitted. It is, rather, that the damages are difficult to measure, which makes liquidated damages appropriate. Once plaintiff's burden of proving the validity of the liquidated damages clause was met, it was not necessary for plaintiff to prove any actual damages and the trial court was correct in precluding defendant's proof in that regard. All that the trial court permitted plaintiff to show was his out-of-pocket expenses of $12,000 as the result of defendant's association, from the commencement of his employment until its end. Such proof was properly received as bearing on the reasonableness of the amount of the liquidated damages. The amount of the liquidated damages in the restrictive covenant was valid and enforceable as a reasonable estimate mutually agreed to be plaintiff's probable damages in the event of defendant's breach. The judgment should, therefore, be affirmed. Order and judgment affirmed, with costs. Sweeney, J. P., Kane, Casey, Mikoll and Yesawich, Jr., JJ., concur.