■ JOHN SAVASTA et al., Appellants, v 470 NEWPORT ASSOCIATES et al., Respondents.—In an action for the dissolution of a limited partnership, and an accounting and a distribution of the partnership profits and assets, the plaintiffs appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Westchester County (Zeck, J.), entered July 13, 1989, as, after a nonjury trial, dismissed the complaint.

Ordered that the judgment is affirmed insofar as appealed from, with costs.

In 1967, the plaintiffs' predecessors in interest purchased vacant land in Harrison, New York and erected a two-building apartment complex known as 470-480 Halstead Avenue. In November 1973 they sold this property to a corporation owned by a general partnership, the defendant 470 Newport Associates (hereinafter Associates) for $5,800,000, and a purchase money mortgage for $1,835,704 was executed. Title to the property thereafter passed to Associates. When Associates had difficulty making payments on the principal of the mortgage, the parties entered into an agreement effective July 15, 1977, wherein the plaintiffs were made limited partners and given a 20% interest in the profits. The plaintiffs' interest as limited partners was to terminate on January 31, 1985. The relevant portion of this agreement which is the subject of dispute on appeal is paragraph four which states, in relevant part, that "should the partnership prior to January 31, 1985, dispose of by sale or otherwise the two properties known as Newport Towers, 470-480 Halstead Avenue, Harrison, New York, then this partnership shall terminate upon any partner hereto giving notice to that effect to the other partners".

Associates created a corporation known as 470 Owners Corp. (hereinafter Owners) and transferred its sole asset, the apartment complex, to Owners. On November 10, 1982, the properties were converted to cooperative apartments and, at the closing, the original mortgage held by the plaintiffs was paid to them together with interest.

On March 3, 1983, the plaintiffs signed a letter stating that their receipt of $45,073.32 was the full amount owing to them at that time representing their 20% share of the partnership profits. This letter specifically stated that the plaintiffs had examined the accounting methods utilized by the general

partners and that they were correct. This $45,073.32 included the limited partners' share of the proceeds from the sale of the cooperative apartments.

Thereafter, the plaintiffs received monthly accountings and payments of their 20% share of the profits from the partnership. No complaint was registered to these 18 separate accountings or payments. However, on September 6, 1984, the plaintiffs sent the general partners a purported notice of termination of the limited partnership pursuant to paragraph four of the agreement. The general partners continued to remit payments to the plaintiffs until January 31, 1985, when the limited partnership terminated pursuant to its terms.

The plaintiffs claim that the cooperative conversion constituted a "disposition by sale or otherwise" and insist that they are entitled to have the partnership terminated and that they receive a 20% interest in the assets of the partnership upon dissolution. We disagree.

As noted by the trial court, the relevant phrase triggering the right to terminate the partnership was disposition "by sale or otherwise" and, by transferring the apartment complex to an entity, Owners, which was wholly owned by the partnership, there was no disposition as urged by the plaintiffs. "Disposition" implies the parting with, alienation and giving up of property. A sale is defined as an absolute or conditional transfer or contract to transfer property including title and consists of the passing of title from the buyer to the seller (see, Black's Law Dictionary [5th ed 1979]; *DeSimon v Ogden Assocs.*, 88 AD2d 472, 478).

Associates did not dispose of the property after it was converted to cooperative ownership. It still held the property through its 100% interest in Owners. The plain language of the agreement states that the property must be "disposed of" before the right to terminate could arise and the partnership continued to own the property under a different form. The apartment corporation, Owners, was merely a conduit through which ownership of the individual units could be transferred to parties seeking to purchase apartments through the sale of shares. The making of the contract of sale for the transfer of the real property from the sponsor (Associates) to the apartment corporation (Owners) was not a taxable event separable for gains tax purposes from the overall conversion (see, *Mayblum v Chu*, 67 NY2d 1008; *Matter of 1230 Park Assocs. v Commissioner of Taxation & Fin. of State of N. Y.*, 170 AD2d 842).

To the extent that the language of the whole agreement may be deemed ambiguous, the trial court properly accepted evidence to establish the intent of the parties as to what was to constitute a sale. It is clear from the testimony adduced at the trial, that the term "dispose of by sale or otherwise" was intended to protect all the partners, both limited and general, from a sale to a separate distinct entity, and not a transfer between the partnership and a business wholly owned by the partnership.

Further, where an option is to be exercised and there is no time limit set forth in the agreement, such an option must be exercised within a reasonable time (see, *Stauss v Title Guar. & Trust Co.*, 284 NY 41; *Fitzpatrick v Woodruff*, 96 NY 561). It is clear that the plaintiffs sought to extend the limited partnership beyond January 31, 1985, so that they might share in the profits realized from the sale of all the apartments. When the defendants refused to permit this undeserved windfall, the plaintiffs waited until the eleventh hour, all the while accepting accountings and 20% of the profits, before claiming that the conversion was a "disposition" as contemplated by the parties. Having accepted the benefits of the limited partnership for 22 months (the November 1982 closing through September 1984 the date of the complaint), we find that this 22-month delay was unreasonable.

Finally, the plaintiffs, by their own conduct, waived their right to terminate the partnership and are estopped from termination of the partnership. Waiver requires that the party to be estopped be aware of certain facts and, being aware of them, elect not to take advantage of them (see, *Glenesk v Guidance Realty Corp.*, 36 AD2d 852, 853). Estoppel will lie when an individual has accepted the benefits of an agreement (see, *Reape v New York News*, 122 AD2d 29; *Boulder Brook Acres v Town & Vil. of Scarsdale*, 112 AD2d 336; 57 NY Jur 2d, Estoppel, § 34, at 54).

The plaintiffs herein accepted the benefits of the agreement for 22 months after the conversion and, even on appeal, do not dispute that the amounts paid to them as their 20% share of cash-flow profits were accurate. At his deposition, the plaintiff Savasta stated that, as of September 6, 1984, the date of the termination letter, there had been no undistributed profits realized by the partnership to which he was entitled. Both limited partners testified that they intended to be bound by their execution of the March 3, 1983, letter which specifically stated that the general partners' accounting was correct and that the $45,073.32 was the full amount owed to them at the

time. These admissions indicate that the limited partners reviewed the accountings and did not characterize the cooperative conversion as a disposition "by sale or otherwise". In light of the plaintiffs' conduct in failing to seek termination of the partnership and accepting the benefits therefrom for almost two years, they waived their right to seek termination of the partnership.

We have examined the plaintiffs' remaining contentions and find them to be without merit. Thompson, J. P., Sullivan, Harwood and O'Brien, JJ., concur.