Lauriat, J.
The plaintiff, BDO Seidman Financial Services (“SFS”), brought this action against its former employee, Stephen T. Gorman (“Gorman”) and his firm, Gorman Financial Management, to recover damages for Gorman’s alleged breach of an agreement between SFS and Gorman. The agreement prohibited Gorman from performing financial services for any SFS client prior to, or within eighteen months after, his termination from SFS, without the consent of the president of SFS. SFS claims that upon Gorman’s *246 resignation from SFS, and before the eighteen-month period expired, Gorman solicited and serviced eleven SFS clients.
SFS now alleges that Gorman’s actions triggered the liquidated damages clause of the agreement, requiring Gorman to compensate SFS in the amount of one and one-half times the fees charged to each client by SFS over the last full fiscal year. SFS also seeks to recover actual damages for Gorman’s alleged breach of his fiduciary duty to SFS and for his alleged misappropriation of trade secret information belonging to SFS.
Gorman asserts that the agreement is invalid and unenforceable because there was no “meeting of the minds.” Gorman also asserts that he was fraudulently induced into executing the agreement. Finally, Gor-man alleges that the liquidated damages clause in the agreement constitutes a penalty, and is therefore unenforceable.
Both SFS and Gorman have now moved for summary judgment on all counts of the complaint.[1] For the reasons which follow, the plaintiffs motion is allowed and the defendant’s motion is denied.
BACKGROUND
For the purposes of this motion, the following facts are undisputed:
SFS is a limited partnership which provides financial planning and investment advice primarily to high net-worth individuals. Gorman was employed by SFS from May 23, 1988 through August 14, 1992 in the position of Director of Financial Planning. After beginning work at SFS, Gorman executed an SFS Financial Planners Agreement (“Agreement”). The Agreement stated in relevant part that (1) the identity of SFS clients constituted “confidential information” which the financial planner could not disclose, (2) the financial planner had á fiduciary relationship with SFS due to his possession of such confidential information, (3) the financial planner’s use of such confidential information upon termination would constitute a breach of his fiduciary duty, and (4) if, within eighteen months of termination, the financial planner were to perform any financial planning or advisory services for an SFS client, he or she would compensate SFS in the amount equal to one and one-half times the fees charged to the client by SFS over the last full fiscal year. (Plaintiffs Exhibit 4.) The Agreement contained an automatic renewal provision which would activate unless “either party gives the other party prior written notice more than thirty days prior to any June 30 . . .” (Plaintiffs Exhibit 4, SECOND Paragraph.) Before executing the Agreement, Gorman consulted with counsel, and amended the Agreement to exempt Gorman’s pre-ex-isting clients from the noncompetition provisions. Allen Gluck, then president of SFS, orally accepted Gorman’s amendments and both parties operated under the Agreement as amended.
On May 28, 1992, Gorman notified SFS in writing of his intent not to automatically renew the Agreement. On July 31, 1992, Gorman submitted written notice of his resignation from SFS, effective August 14, 1992. After submitting his notice of resignation, Gor-man established a financial planning and investment advisory business, Gorman Financial Management. On August 17, 1992, Gorman began soliciting non-exempt clients of SFS by sending each client an instruction letter with forms necessary for transferring their files to Gorman Financial Management. Eleven former SFS clients ultimately transferred their files to Gor-man Financial Management. These clients accounted for $80,982 in fees to SFS in the 1992 fiscal year. SFS now seeks to be compensated for the loss of these clients as provided under the Agreement.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the party moving for summary judgment does not have the burden of proof at trial, this burden may be met by either submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, supra at 17.
I.
The Agreement explicitly states that its provisions are governed by New York law. “Where the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties’ choice as long as the result is not contrary to public policy.” Steranko v. Inforex, Inc., 5 Mass.App.Ct. 253, 260 (1977). Gorman asserts that noncompetition contracts are against public policy in Massachusetts, and thus, this court should not apply New York law to sustain the contract. However, under both Massachusetts and New York law, agreements not to compete are enforceable as long as they are reasonable and necessary to protect the legitimate interests of the employer. Wells v. Wells, 9 Mass.App.Ct. 321, 323 (1980); New England Canteen Service, Inc. v. Ashley, 372 Mass. 671, 673-74 (1977); Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 287 (1974); Stanley *247 Tulchin Assoc. v. Vignola, 186 A.D.2d 183, 185, 587 N.Y.S. 761, 762-63 (2d Dept. 1992). “The interests which an employer may protect are trade secrets, confidential data, and good will.” Wells v. Wells, supra at 323.
The agreement in question provides that, if a financial planner solicits and services SFS clients within eighteen months of his or her termination from SFS, the financial planner must compensate SFS in a specified amount. Certainly, if SFS financial planners could freely bring their SFS clients into their own private practice upon their resignation from SFS, both SFS’s good will and its confidential client information could be exploited. The Agreement thus protects the legitimate business interests of SFS by prohibiting a financial planner from joining SFS, gaming clients through SFS, and then leaving SFS and taking his SFS clients with him, without compensating SFS for those clients. This court therefore concludes that the Agreement is not against Massachusetts’ public policy, and is properly governed by New York law.
II.
Gorman raises several defenses regarding the enforceability of the Agreement. Each will be discussed in turn.
“In determining whether a contract exists, the inquiry centers upon the parties’ intent to be bound, i.e., whether there was a ‘meeting of the minds’ regarding the material terms of the transaction.” Central Savings. F.S.B. v. National Westminster Bank, U.S.A., 176 A.D.2d 131, 132, 574 N.Y.S.2d 18, 19 (1st Dept. 1991). Gorman asserts that there was never a “meeting of the minds” because his acceptance of the contract was contingent on his acceptance of employment with SFS in the capacity of “Director of Financial Planning.” While Gorman contends that he was never awarded the position of Director of Financial Planning, this argument is not supported by the record. (Chaffin Aff. ¶7.) Indeed, in his letter advising Mr. Fusco, the managing partner of SFS, of his intent not to renew the Financial Planner’s agreement, Mr. Gorman describes himself as the “Director of Financial Planning.” (Plaintiffs Exhibit 7.) Furthermore, Gorman’s continued employment with SFS for four years after the execution of the contract does not lend credence to Gorman’s assertion that he was never awarded the only position acceptable to him.
Gorman further asserts that SFS failed to notify him of its acceptance of his amendments to the standard agreement. Gorman claims that SFS’s actions constituted a failure to accept his “counter-offer,” and thus, there is no valid agreement. However, Allen Gluck implicitly agreed to Gorman’s changes when he accepted the revised Agreement. (Plaintiffs Exhibit 4.) Furthermore, Gorman’s letter of intent not to “automatically renew” the Agreement demonstrates Gorman’s belief that the Agreement was indeed still valid in 1992. It is “the manifestation of the parties’ intention, rather than the actual or real intention” which determines whether the parties have the necessary intent to be bound. Conopco, Inc. v. Wayne Ltd., 190 A.D.2d 587, 588, 593 N.Y.S.2d 787, 787 (1st Dept. 1993). Furthermore, under New York law, “estoppel will lie when an individual has accepted the benefits of an agreement.” Savasto v. 470 Newport Associates, 180 A.D.2d 624, 626, 579 N.Y.S.2d 167, 169 (2d Dept. 1992), aff'd 82 N.Y.2d 763 (1993). Thus, assuming arguendo that Gorman’s revisions constituted a counter-offer which SFS did not properly accept, Gor-man would still be estopped from denying the existence of an employment agreement after reaping the benefits of four years of employment at SFS, with an ending salary of $93,500.
Gorman asserts that he was fraudulently induced into executing the Agreement, and thus he has the right to rescind the contract. In New York, a party may obtain rescission on the grounds of fraud if he can prove that his assent was induced by representations of material existing facts at the time the contract was entered into, that the representations were false, that the other parly intended to deceive him, and that he was actually deceived. Pittsburgh Coke and Chemical Co. v. Bollo, 421 F.Supp. 908, 924 (1976), aff'd 560 F.2d 1089 (2d Cir. 1977), citing Manchel v. Kasdan, 286 A.D. 483, 484, 144 N.Y.S.2d 694, 695 aff'd 1 N.Y.2d 734, 134 N.E.2d 687 (1955). Gorman asserts that Allen Gluck represented SFS to be a “strong, growing, and financially sound business” and assured Gorman that Gorman’s supervisor, Christianne Delessert, would be changing positions within a year which would allow Gorman to assume her clients. In fact, SFS experienced financial difficulty during Gorman’s tenure and Delessert did not move from her position. However, Gorman admits to gaining knowledge at the end of his first year of employment that SFS was going through financial difficulties, and he certainly knew that his supervisor had not been promoted. (Gorman Depo., p. 95.) “(T]he right to rescind for fraud must be exercised promptly after the injured party learns of the wrong.” New York Telephone Co. v. Jamestown Telephone Co., 282 N.Y. 365, 372-73, 26 N.E.2d, 297-98 (1940). Therefore, in continuing his employment with SFS three years after Gorman knew of the alleged misrepresentations, Gorman waived his right to rescind the Agreement on the basis of fraud. New York Telephone Co., supra at 372-73 (acceptance of benefit under contract with knowledge of wrong constitutes waiver of wrong).
Finally, Gorman asserts that the liquidated damage provision of the Agreement is unenforceable as a penalty. The Agreement provides that if a financial planner, within eighteen months of termination with SFS, were to perform any financial planning or advisory services for an SFS client, he or she would compensate SFS in the amount equal to one and one-half times the fees charged to the client by SFS *248 over the last full fiscal year. “A contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation.” Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 425, 361 N.E.2d 1015, 1018 (1977). Recognizing that “damages from breach of an employment contract are inherently incapable of accurate estimation,” New York courts have routinely given effect to liquidated damages clauses in such agreements. Ryan v. Orris, 95 A.D.2d 879, 881, 463 N.Y.S.2d 883, 885 (1983); Karpinski v. Ingrasci, 28 N.Y.2d 45, 52, 268 N.E.2d 751, 755, 320 N.Y.S.2d 1, 7 (1971); RESTATEMENT (SECOND) OF CONTRACTS §356, Comment b, Illustration 2 (1981).
In the instant case, the damages arising from Gorman’s solicitation and servicing of former SFS clients are not easily ascertainable because it is impossible to predict how long each client would have utilized the services of SFS. Further, the amount of the liquidated damages clause, one and one-half times the fees charged by SFS over the last full fiscal year, is not unreasonable. If Gorman retains these clients over an extended period, his profits will soon outweigh the amount of this compensation. Moreover, Gorman admitted that “150 percent” was “sort of a standard in the business.” (Gorman Depo. p. 190.) Because the liquidated damages clause bears a reasonable relationship to the amount of actual damages, and the actual damages may not be determined with any degree of certainty, the liquidated damages provision is enforceable.
III.
SFS also seeks to recover actual damages arising from Gorman’s alleged breach of his fiduciaiy duty to SFS and for Gorman’s alleged misappropriation of the trade secret information of SFS. Because these allegations address Gorman’s conduct in soliciting and servicing former SFS clients, which is the very conduct the parties agreed to address contractually through the Agreement, the claims are duplicative of SFS’s breach of contract claim. Furthermore, SFS may not recover both actual damages and liquidated damages because, by definition, liquidated damages are only enforceable when actual damages are indeterminable. Thus, SFS is only entitled to its liquidated damages for the loss of eleven clients to Gorman Financial Management. SFS is precluded from also recovering actual damages for essentially the same occurrence.
ORDER
For the foregoing reasons, the plaintiff, BDO Seid-man Financial Services’ Motion for Summary Judgment is ALLOWED. The plaintiffs damages are limited to the amounts specified in the liquidated damages clause of the Financial Planners Agreement. The Motion for Summary Judgment of defendants, Stephen T. Gorman and Gorman Financial Management is DENIED.

 The original complaint alleged that Gorman violated G.L.c. 93A This count was waived by SFS in open court.