No. 01-332

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 294

ARROWHEAD SCHOOL DISTRICT NO. 75,
PARK COUNTY, MONTANA,

   Plaintiff and Respondent,

  v.

JAMES A. KLYAP, JR.,

   Defendant and Appellant.

APPEAL FROM:  District Court of the Sixth Judicial District,
       In and for the County of Park, Cause No. DV-99-23
       The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

     James A. Klyap, Emigrant, Montana (*pro se*)

   For Respondent:

     Tara Depuy, Park County Attorney, Livingston, Montana

           Submitted on Briefs:  November 29, 2001

              Decided:  October 28, 2003

Filed:

              Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Appellant James Klyap (Klyap) appeals a judgment of the Sixth Judicial District Court, Park County, ordering him to pay liquidated damages under his contract with Arrowhead School District No. 75. We affirm.

¶2 We address the following issue on appeal: Did the District Court err in concluding the damages clause in the contract was an enforceable liquidated damages term rather than an unenforceable penalty?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶3 Arrowhead School District No. 75 (District) is located in Park County south of Livingston. The District consists of one school, Arrowhead School (School). As the District and the School are essentially the same entity for purposes here, the remainder of this Opinion will refer to both as the School in order to avoid confusion.

¶4 For the 1997-98 school year, the School employed about eleven full-time teachers and several part-time teachers. During that school year, the School employed Klyap as a new teacher instructing math, language arts, and physical education for the sixth, seventh, and eighth grades. In addition, Klyap, through his own initiative, helped start a sports program and coached flag football, basketball, and volleyball.

¶5 During that same year, the teachers of the School considered forming a union. Because of this development, the Board of Trustees decided to delay offering teaching contracts until a decision on unionization was made. After the teachers voted not to unionize, the School offered Klyap a contract for the 1998-99 school year on or about June

2

15, 1998, which he accepted by signing on or about June 30, 1998.[1] This contract provided

for a $20,500 salary and included the liquidated damages clause at issue here. The clause

calculated liquidated damages as a percentage of annual salary determined by the date of

breach; a breach of contract after July 20, 1998, required payment of 20% of salary as

damages.[2] Klyap also signed a notice indicating he accepted responsibility for familiarizing

---

[1]In the District Court, Klyap asserted that no contract was formed because, after he signed the contract, the School did not return a copy of the contract to him which was executed by the School before he gave notice of his resignation. However, both Klyap and the School executed the contract. As the District Court concluded, "[T]here can be no dispute that a teaching contract was entered into between Arrowhead and Klyap." We simply note here that we see no merit in Klyap's argument, as the contract was formed when the School signed it, whether or not the executed copy was sent back to Klyap.

[2]The full text of the liquidated damages clause in Klyap's 1998-99 contract reads:

A teacher not facing discipline or discharge may be released from his/her teaching contract provided the teacher makes payment for liquidated damages to the School District prior to release on the following schedule. The date the School District receives the teacher's letter requesting release is the date controlling on the following schedule. The teacher shall provide a minimum of two calendar weeks notice. Any teacher requesting to be released from his/her individual teaching contract from June 20 through July 20 will pay ten percent (10%) of the salary that teacher would earn pursuant to that contract as liquidated damages.

Any teacher requesting to be released from their individual teacher contract after July 20 will pay twenty per cent (20%) of the salary that teacher would earn pursuant to that contract as liquidated damages.

The teacher and the Board of Trustees agree the School District incurs costs that are impractical or are extremely difficult to fix when a teach [sic] breaches contract. Liquidated damages are to cover the impractical or extremely difficult to fix costs.

Jurisdiction and enforcement of this provision in the individual contract is

3

himself with the information in the teacher's handbook which also included the liquidated damages clause.

¶6      Despite this contract, Klyap continued to look for other employment. According to his testimony at trial, Klyap looked for other work in part because he felt the School might not honor the contract. However, at an interview with another school, he told that school he was already under contract.

¶7      At any rate, on or about August 5, 1998, Dome Mountain Ranch offered Klyap a position. Klyap decided to accept the position. On August 12, he informed the School that he would not be returning for the 1998-99 school year even though classes were scheduled to start on August 26. As a result of Klyap's decision not to teach at the School, the School sought to enforce the liquidated damages clause in Klyap's teaching contract for the stipulated amount of $4,100, 20% of the $20,500 salary. Klyap gave a check to the School administration but asked that it not be deposited as there were insufficient funds in the account. Later, after consulting with family, Klyap stopped payment on the check as he did not believe the liquidated damages clause was enforceable.

¶8      After Klyap resigned, the School attempted to find another teacher to take Klyap's place. Although at the time that Klyap was offered his contract the School had 80 potential applicants, only two viable applicants remained available. Right before classes started, the

through the 6th Judicial District, Park County, Livingston, Montana, with the teacher being liable for all fees under the above schedule, court costs, interest, reasonable attorney fees of the School District and other actions the court deems appropriate. The Court also has jurisdiction to award interest on any amount due and other actions the court deems appropriate.

4

School was able to hire one of those applicants, a less experienced teacher, at a salary of $19,500.

¶9 Finally, as a result of Klyap's stop payment, the School brought suit against Klyap to enforce the liquidated damages clause. After a bench trial, the District Court determined the clause was enforceable because it was agreed to by the parties as demonstrated by the signed contract and because the damages suffered by the School qualified under § 28-2-721, MCA, as impractical and extremely difficult to fix. Specifically, the court found the School suffered damages because it had to spend additional time setting up an interview committee, conducting interviews, training the new, less experienced teacher, and reorganizing the sports program. The District Court also found that all these activities took away from the other school and administrative duties that had been scheduled for that time and that the new teacher missed all the staff development training earlier that year. Finally, the court found that such clauses are commonly used in Montana and that the School had routinely and equitably enforced the clause against other teachers. After concluding that the School took appropriate steps to mitigate its damages, the court awarded judgment in favor of the School in the amount of $4,100. The court did not, however, award attorney fees, court costs, or interest. Klyap now appeals. Further facts are discussed below.

## II. STANDARD OF REVIEW

¶10 As discussed in detail below, this case presents an opportunity to clarify the law regarding liquidated damages in Montana. We begin by setting out the applicable standard

5

of review, which we have applied in the past, but never explicitly stated. Accordingly, whether a stipulated damages provision in a contract constitutes enforceable liquidated damages or an unenforceable penalty is question of law. *Lake River Corp. v. Carborundum Co.* (7th Cir. 1985), 769 F.2d 1284, 1290. Therefore, when the underlying facts are not in dispute, this determination is a conclusion of law which we review for correctness.

## III. DISCUSSION

¶11 **Did the District Court err in concluding the damages clause in the contract was an enforceable liquidated damages term rather than an unenforceable penalty?**

**A. The Parties' Positions**

¶12 Klyap asserts the clause is a penalty which must be stricken from the contract by this Court. In support of his position, Klyap makes a number of the arguments commonly offered against enforcement of liquidated damages. First, Klyap argues that under *Weber v. Rivera* (1992), 255 Mont. 195, 841 P.2d 534, there must be specific evidence of negotiation regarding damages when a party seeks to enforce a liquidated damages provision in a form contract because the absence of negotiation implies the clause is a penalty. He then points to the fact that the parties did not specifically negotiate the liquidated damages clause at issue here so as to reasonably estimate damages upon breach because no one in the School's administration told him or any of the other teachers about the liquidated damages clause before offering the contracts.

¶13 Next, Klyap asserts the clause is a penalty because the testimony of Druska Kinkie (Kinkie), a trustee on the school board, indicated that the purpose of the clause was to

6

"prevent losing a teacher at a late period of time." Klyap argues this testimony of intent constitutes a judicial admission of fact which is dispositive in this case because Kinkie admitted to the School's intent to impose a penalty.

¶14    In addition, Klyap asserts the "no actual damages" defense in arguing the School did not suffer any damages because a new teacher was hired for a lower salary before the start of the school year. Finally, Klyap makes a policy argument that a liquidated damages provision such as the one at issue here should be considered a penalty because the damages are unreasonably oppressive in a profession that is already very low paying.

¶15    In contrast, the School presents arguments that are commonly offered in support of enforcement of liquidated damages provisions. For example, the School points out that while this Court has not had the opportunity to address a liquidated damages clause in a teacher's contract, a number of other jurisdictions have found such provisions valid without addressing or requiring any specific evidence of negotiation. Citing *Arduini v. Board of Educ.* (Ill. App. Ct. 1981), 418 N.E.2d 104, 109 (*Arduini I*), *rev'd on other grounds by Arduini v. Board of Educ.* (Ill. 1982)*,* 441 N.E.2d 73 (*Arduini II*), the School argues the contract clause at issue here is not a penalty because the use of a percentage of the breaching teacher's salary allows for damages properly relative to the skills of the teacher. In addition, citing *Unified Sch. Dist. v. DeWerff* (Kan. 1981), 626 P.2d 1206, 1208, the School asserts the clause is not a penalty because it provides for different damages depending on the time of breach. As a result of these methods of determining damages, the School asserts the liquidated damages clause is for payment of a sum in lieu of performance rather than a

7

penalty imposed to secure performance.

¶16    In response to Klyap's position on the School's intention to insert the clause as a penalty, the School asserts that Kinkie's characterization of the clause as a penalty is not a judicial admission because she was giving a lay person's opinion on a conclusion of law. Further, the School points out that Kinkie testified the clause had two purposes:  to encourage teachers to "think twice" before signing a contract in June and to prevent teachers from quitting at a late period of time.

¶17    In response to Klyap's "no actual damages" argument, the School points out that it suffered damages that are impractical or extremely difficult to fix, as required by the statute and as found by the District Court.  Finally, the School argues that the reasonableness of stipulated damages must be viewed at the time of contracting, not after the fact, due to the logical conflict between having to estimate reasonable damages and at the same time being in a situation where damages are impractical or extremely difficult to fix.  Therefore, the School asserts the District Court properly enforced the stipulated damages clause as liquidated damages rather than striking the clause as a penalty.

¶18    We note here that the parties presented these arguments to the District Court in their proposed findings of fact and conclusions of law.  However, because the District Court did not specifically address these arguments other than in its findings and conclusions as already detailed above, we do not present the District Court's determinations again.

**B. The State of the Law of Liquidated Damages**

¶19    Before addressing the instant case, our review of the precedent on this issue indicates

8

there is disparity in our case law on the enforceability of liquidated damages clauses. Further, it is apparent that reconciliation of this disparity requires that we delve into the history and development of the law of liquidated damages. To that inquiry we now turn.

### 1. Freedom of Contract

¶20 The fundamental tenet of modern contract law is freedom of contract; parties are free to mutually agree to terms governing their private conduct as long as those terms do not conflict with public laws. *See, e.g., Lewis v. B & B Pawnbrokers, Inc.*, 1998 MT 302, ¶ 22, 292 Mont. 82, ¶ 22, 968 P.2d 1145, ¶ 22. This tenet presumes that parties are in the best position to make decisions in their own interest. Normally, in the course of contract interpretation by a court, the court simply gives effect to the agreement between the parties in order to enforce the private law of the contract. *Ophus v. Fritz*, 2000 MT 251, ¶ 23, 301 Mont. 447, ¶ 23, 11 P.3d 1192, ¶ 23. When one party breaches the contract, judicial enforcement of the contract ensures the nonbreaching party receives expectancy damages, compensation equal to what that party would receive if the contract were performed.[3] *See, e.g., Riverview Homes II, Ltd. v. Canton*, 2001 MT 309, ¶ 24, 307 Mont. 517, ¶ 24, 38 P.3d 848, ¶ 24; *Conagra, Inc. v. Nierenberg*, 2000 MT 213, ¶ 69, 301 Mont. 55, ¶ 69, 7 P.3d 369, ¶ 69. *See also* § 27-1-311, MCA. By only awarding expectancy damages rather than additional damages intended to punish the breaching party for failure to perform the contract, court enforcement of private contracts supports the theory of efficient breach. In other

---

[3]Expectancy damages only include contract damages still suffered after the nonbreaching party reasonably attempts to mitigate damages, as in this case where the School hired a replacement teacher.

words, if it is more efficient for a party to breach a contract and pay expectancy damages in order to enter a superior contract, courts will not interfere by requiring the breaching party to pay more than was due under their contract. *Patton v. Mid-Continent Sys., Inc.* (7th Cir. 1988), 841 F.2d 742, 750.

¶21    Liquidated damages are, in theory, an extension of these principles. Rather than wait until the occurrence of breach, the parties to a contract are free to agree in advance on a specific damage amount to be paid upon breach. 24 RICHARD A. LORD, WILLISTON ON CONTRACTS, § 65:1 (4th ed. 2002) (hereinafter WILLISTON ON CONTRACTS). This amount is intended to predetermine expectancy damages. Ideally, this predetermination is intended to make the agreement between the parties more efficient. Rather than requiring a post-breach inquiry into damages between the parties, the breaching party simply pays the nonbreaching party the stipulated amount. Further, in this way, liquidated damages clauses allow parties to estimate damages that are impractical or difficult to prove, as courts cannot enforce expectancy damages without sufficient proof.

¶22    However, theory clashes with reality when, after breach of the contract, one of the parties believes the liquidated damages clause is far afield from what the nonbreaching party would be entitled to under normal expectancy damages.[4] Consequently, when one of the parties seeks a judicial determination on whether the stipulated damages clause in the contract constitutes a penalty, courts are forced into a different role than simple interpretation

---

[4]The case at bar is a case in point. As noted above, Klyap asserts the School did not suffer any damages because it was able to find another teacher at a lower salary before classes started.

10

and enforcement of the private law of the contract. Instead, the court must step in and decide whether or not it will rewrite the contract already agreed to by the parties by striking the stipulated damages clause as a penalty.[5] In so doing, the court substitutes its judgment for that of the parties when they initially entered the contract.

### 2. Judicial Enforcement of Liquidated Damages

¶23 Because judicially rewriting a contract is foreign to the principle of freedom of contract and to the court's normal role of interpretation and enforcement of expectancy damages, the law of liquidated damages has a somewhat tortured history. Indeed, the disparity in Montana's case law is apparently only one of numerous examples, as the commentators on the subject note many inconsistencies. *See* Kenneth W. Clarkson et al., *Liquidated Damages v. Penalties: Sense or Nonsense?,* 1978 WIS. L. REV. 351 (hereinafter Clarkson) ("The ablest judges have declared that they felt themselves embarrassed in ascertaining the principle on which the decisions [distinguishing liquidated damages from penalties] . . . were founded." quoting Ruggles, J. in *Cotheal v. Talmage* (N.Y. 1854), 9 N.Y. 551); Goetz, 554 & n.2.

¶24 In order to determine whether a clause should be declared a penalty, courts attempt to measure the reasonableness of a liquidated damages clause. Because the language of the clause is obviously not controlling, courts look beyond the contract to analyze

---

[5]Originally, courts exercised equitable powers to strike liquidated damages clauses in order to prevent a party from receiving damages in excess of the loss suffered by breach of contract. *See* Charles J. Goetz & Robert E. Scott, *Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes on an Enforcement Model and a Theory of Efficient Breach*, 77 COLUM. L. REV. 554, 554-55 & n.1,4 (1977) (hereinafter Goetz).

reasonableness. As indicated by Montana's statute on liquidated damages, § 28-2-721,

MCA,[6] and by treatises including WILLISTON ON CONTRACTS, § 65:1, and § 356 of the

RESTATEMENT (SECOND) OF CONTRACTS (1965) (hereinafter RESTATEMENT § 356), the

threshold indicator of reasonableness is whether the situation involves damages of a type that

are impractical or extremely difficult to prove. When the parties to the contract will suffer

difficult to prove damages, a court can assume there was a reasonable motive for adding a

liquidated damages clause, because, as mentioned, stipulated damages can quantify damages

that a court could not otherwise award for lack of proof.[7] However, because the difficulty

---

[6]Section 28-2-721, MCA, entitled "**When provision fixing liquidated damages valid**," reads:

> (1) Every contract by which the amount of damage to be paid or other compensation to be made for a breach of an obligation is determined in anticipation thereof is to that extent void, except as expressly provided in subsection (2).
>
> (2) The parties to a contract may agree therein upon an amount which shall be presumed to be an amount of damage sustained by a breach thereof when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

[7]According to the language of § 28-2-721, MCA, liquidated damages are only allowed in a situation where damages are impractical or extremely difficult to prove. However, this section was adopted in 1895 from the Field Civil Code and consequently does not reflect the modern principle that parties in any type of situation can agree to liquidated damages as a matter of freedom of contract. *See* Goetz, 559-60 & n. 22. Because, as we discuss below, the instant case qualifies as a situation where damages are impractical or extremely difficult to prove, we need not address this potential problem with § 28-2-721, MCA. We note however, that much of our general statutory law regarding contract is taken from the Field Civil Code and as such these statutes are intended to codify common law. *See generally* Andrew P. Morriss et al., *Debating the Field Civil Code 105 Years Late*, 61 Mont. L. Rev. 371 (2000). *But see Deuninck v. West Gallatin Irrigation Co.* (1903), 28 Mont. 255, 261-62, 72 P. 618, 620 (damages must be impractical to fix); *Clifton v. Willson* (1913), 47 Mont. 305, 312, 132 P. 424, 425.

12

of proof of damages does not by itself demonstrate reasonableness, courts must look further to the amount of damages.

¶25 According to RESTATEMENT § 356 and other treatises, damages must be reasonable in relation to the damages the parties anticipated when the contract was executed or in relation to actual damages resulting from the breach. However, these tests are of limited value for a number of reasons. First, the reasonableness of anticipated damages can be difficult to determine because, as mentioned, the parties are usually in a situation where damages are difficult to prove. Hence, the question of reasonableness becomes somewhat circular and subjective: how can one meet a burden of proof to demonstrate anticipated damages are reasonable and yet difficult and impractical to prove at the same time? While this proof may be theoretically possible, it inevitably provides fertile grounds for disagreement between the parties.

¶26 Second, regarding the relation between actual damages and stipulated damages, the parties are usually already before the court because one party asserts the disparity is too great in the first place. The breaching party often argues the stipulated damages should not be enforced because the nonbreaching party did not suffer any actual damages. *See, e.g., O'Keefe v. Dyer* (1898), 20 Mont. 477, 484-85, 52 P. 196, 199 (clause a penalty in part because no actual damages suffered). Consequently, this rule provides courts little guidance because a comparison of actual to stipulated damages is conclusory and ignores difficult to prove damages. Finally, because the language of RESTATEMENT § 356 uses "or" to indicate

13

either anticipated or actual damages can be used to determine reasonableness, parties argue over which of the tests should apply to their case. For instance, if a clause was reasonable at the time of contracting but unreasonable after the fact, must it be upheld by a court as enforceable or struck as a penalty? *See* Larry A. DiMatteo, *A Theory of Efficient Penalty: Eliminating the Law of Liquidated Damages*, 38 Am. Bus. L.J. 633, 724 (2000-01) (hereinafter DiMatteo) (noting proposed liquidated damages reforms to the Uniform Commercial Code Article 2 that allow either test to satisfy reasonableness).

¶27     As a result of this lack of clarity, courts often inquire into the intent of the parties at the time of contracting in order to determine reasonableness. *See* WILLISTON ON CONTRACTS, § 65:11. Specifically, courts look to whether the parties negotiated the clause at issue and whether the parties actually attempted to estimate damages in order to determine if the bargaining process was voluntary. However, there is often a lack of evidence of specific negotiation on the liquidated damages clause. Further, form contracts with predrafted liquidated damages present a special problem under this test because there is always a lack of evidence of negotiation. Courts cannot simply strike all stipulated damages clauses in form contracts based on lack of negotiation because such contracts are widely used, the terms are often reasonable, and the contracts provide efficiencies necessary to the conduct of everyday business. Consequently, the intent test has limited usefulness as well.

¶28     When there is evidence of intent, courts look to whether one of the parties specifically intended to penalize the other party for breach in order to secure their performance rather than simply provide for an amount designed to properly compensate for the failure to

14

perform. Under this rule, penalty clauses are declared *in terrorem* for unfairly forcing performance. *See* Goetz, 555. However, as WILLISTON ON CONTRACTS points out,

> [D]amages for breach of contract, by their nature, induce performance of contractual undertakings. . . . [M]erely because a liquidated damages provision induces performance of a contract does not make the clause a penalty; it is only when it induces performance illegitimately, as when the amount is disproportionately large relative to the reasonably anticipated probable damages (or in some jurisdictions, relative to the actual damages suffered) so that performance is coerced by making breach unreasonably costly.

WILLISTON ON CONTRACTS, § 65:1. Therefore, because parties usually prefer performance of a contract over payment of damages, courts cannot simply strike as *in terrorem* the legitimate use of liquidated damages to induce performance when evidence demonstrates one party intended to secure performance. Rather, other evidence of unreasonableness, such as that discussed above, is needed to show a clause is a penalty.

¶29 Personal service contracts are a particularly good example of the shortcomings of declaring a clause *in terrorem* based only on intent. Liquidated damages in a personal service contract induce performance by an employee by predetermining compensation to an employer if the employee leaves. However, the employer clearly prefers performance by the specific employee because that employee was chosen for hire. The preference for performance by a specific person is reflected in the rule that personal service contracts are not assignable. Further, because personal service contracts are not enforceable by specific performance, *Reier Broad. Co. v. Kramer*, 2003 MT 165, ¶¶ 11,16, 316 Mont. 301, ¶¶ 11,16, ___ P.3d ___, ¶¶ 11, 16, liquidated damages are an appropriate way for employers to protect their interests. *See United States v. Martin* (C.D. Cal. 1989), 710 F.Supp. 271, 275

15

(liquidated damages in personal service contract is not involuntary servitude but monetary compensation for contract damages). Therefore, declaring such a clause *in terrorem* can remove an employer's legitimate efforts to secure performance by a specific employee.

¶30     Finally, courts also look to how the clause operates as an indicator of reasonableness. For example, courts look at whether the clause provides for the same damages without regard to the materiality of the breach or whether the clause penalizes a mere delay in payment. *Wibaux v. Grinnell Live-Stock Co.* (1889), 9 Mont. 154, 164-66, 22 P. 492, 495 (no provision for partial breach converts liquidated damages to a penalty); *Comphealth, Inc. v. Highland View Outpatient Surgical Ctr.* (1989), 240 Mont. 366, 369, 783 P.2d 1385, 1388 (substantial rather than full compliance with cancellation provisions sufficient to prevent award of liquidated damages). Again, however, these tests have failings as well in that reasonable clauses can be declared penalties. *See* DiMatteo, 657-706 (discussing the inefficient results under the various tests).

¶31     The end result of these rule variations is that a clause may be reasonable under one test, but unreasonable under another. Consequently, oftentimes, as in the case at bar, the parties disagree about what tests apply to the contract at issue. In addition, parties dispute who has the burden of proof and even whether the question is one of fact or law. To add to the lack of direction, courts tend to only discuss the test under which the clause in that case is held to be a penalty, rather than assessing the clause under each perspective. In sum, these various tests and others result in inconsistencies in the law of liquidated damages and Montana's jurisprudence is no exception. To illustrate, we now turn to Montana's case law

on the subject.

### 3. Montana Case Law on Liquidated Damages

¶32    While our first case addressing liquidated damages dates back to 1868, *see Bautz v. Kuhworth* (1868), 1 Mont. 133, the first modern case thoroughly discussing and analyzing liquidated damages at length is *Morgen & Oswood Constr. Co. v. Big Sky of Montana, Inc.* (1976), 171 Mont. 268, 557 P.2d 1017.[8] *Morgen* involved a contract for the construction of condominiums near a ski resort.  Upon Morgen's completion of construction, Big Sky held back from the final payment liquidated damages of $500 per day of delay after the agreed completion date as per contract terms.  Morgen refused this final payment and sued for the full contract price.  *Morgen*, 171 Mont. at 277, 557 P.2d at 1022.

¶33    In holding the liquidated damages clause was enforceable by Big Sky, we set out a rule that essentially embodies all the tests discussed above.  We stated:

> Whether the forfeiture provision imposed a penalty, or provided for liquidated damages, is to be determined from the language and subject matter of the contract, the evident intent of the parties and all the facts and circumstances under which the contract was made.  The most important facts to be considered are whether the damages were difficult to ascertain, and whether the stipulated amount is a reasonable estimate of probable damages or is reasonably proportionate to the actual damage sustained at the time of the breach.

*Morgen*, 171 Mont. at 273, 557 P.2d at 1020 (citation omitted).

¶34    After noting the evidence demonstrated damages from delay were impractical or difficult to fix because Big Sky lost months of sales opportunities right before the ski season,

---

[8]While there are a number of liquidated damages cases from 1869 to 1977, none of those cases add to the discussion here.

we held that Big Sky showed the $500 per day damages were reasonable because $500 was less than the anticipated daily costs of loan interest, utility costs, and lost rent. We also noted that the clause was reasonable because Big Sky introduced evidence showing its actual damages were greater than the liquidated damages. *Morgen*, 171 Mont. at 271, 557 P.2d at 1019-20.

¶35    In addition to comparing the liquidated damages to anticipated and actual damages, we also noted that the liquidated damages were reasonable in light of the intent of parties as shown by their precontract negotiations. Specifically, when given a later completion date during negotiation, Morgen lowered its bid by an amount less than the liquidated damages provided for in the contract with the earlier completion date and Big Sky refused this bid. *Morgen*, 171 Mont. at 274, 557 P.2d at 1021. Further, we noted the bargaining process itself was proper because "most construction contractors are not so unsophisticated as to merit special protection by the courts" and because "while the liquidation amounts may not actually be bargained, the contractor can take this into account when he makes his bid." *Morgen*, 171 Mont. at 272, 557 P.2d at 1020 (citation omitted). Lastly, we noted that the language of the contract was only one consideration and not in any way controlling. *Morgen*, 171 Mont. at 272-73, 557 P.2d at 1020. Therefore, under any of the tests used to measure the reasonableness of liquidated damages, the clause in *Morgen* was enforceable.

¶36    Indeed, because *Morgen* addresses "all the facts and circumstances under which the contract was made," including the difficulty of proof, the amount of anticipated and actual damages as compared to liquidated damages, the evidence of actual negotiation and intent

18

of the parties, and the nature of the bargaining process between the two parties, the facts and holding of *Morgen* represent the ideal of liquidated damages under the principle of freedom of contract. The parties to *Morgen* negotiated with full information and predetermined a damage amount which was upheld by the courts.

¶37   The next two cases addressing liquidated damages, while brief, are consistent with *Morgen* even though *Morgen* is not cited. *Erickson v. First Nat'l Bank* (1985), 215 Mont. 350, 359, 697 P.2d 1332, 1338, addressed a contract for deed which provided that upon default, any payments already made under the contract would be considered liquidated damages for reasonable rental value. In upholding the clause, we stated, "If, in fact, liquidated damages approximate those actually suffered, the amount is reasonable." *Erickson*, 215 Mont. at 359, 697 P.2d at 1338. Because evidence showed that the reasonable rental value of the property for the time the defaulting party was in possession approximated the liquidated damages clause, we upheld the clause under this actual damages rule. However, we noted that testimony by a representative of First National Bank was the only evidence submitted on the issue. *See also Lilienthal v. District Court of Sixteenth Judicial Dist.* (1982), 200 Mont. 236, 242, 650 P.2d 779, 782 (citing *Morgen* in support of remanding a damage award to the trial court because no evidence was taken to demonstrate $500 per day delay charges were reasonably related to the actual damages sustained by the Bank).

¶38   In *Ruegsegger v. Welborn* (1989), 237 Mont. 317, 321, 773 P.2d 305, 308, we considered a $75 per day holdover rent clause meant to apply if the tenants did not vacate agricultural property upon a date agreed upon by the parties. Again, we held the clause was

19

reasonable and enforceable because it amounted to less than actual damages as shown by the market value of the annual lease as agreed to between the parties, because the agreement detailed what use of the property the holdover rent was intended to pay for, and because the terms reflected the parties' intent as demonstrated by actual bargaining.

¶39    Following *Morgen*, *Erickson*, and *Ruegsegger*, our precedent took two dramatic turns, first away from *Morgen* in *Daugherty Cattle Co. v. General Constr. Co.* (1992), 254 Mont. 479, 839 P.2d 562, then back again in *Weber v. Rivera* (1992), 255 Mont. 195, 841 P.2d 534.


¶40    In *Daugherty*, we addressed another contract for deed which required payments already made under the contract to be considered liquidated damages for reasonable rental value upon default.  Citing *Erickson*, the buyer argued that actual damages in the form of reasonable rental value had to be considered in order to determine whether the $857,000.00 in principal payments and $385,447.50 in interest already paid during the approximately ten years the buyer was in possession should be considered a penalty relative to the contract price of $1,195,000.00.  However, in contrast to *Morgen's* reliance on evidence of difficulty of proof, actual and anticipated damages, and intent, *Daugherty* affirmed the district court's grant of summary judgment.  Specifically, *Daugherty* held that it was not necessary to hear evidence on the reasonable rental value in order to determine whether the liquidated damages clause was reasonable. Regarding *Erickson's* reliance on a comparison to actual damages, *Daugherty* stated the rule was not mandatory because *Erickson* "does not require a judicial determination that the amount forfeited was a reasonable rental [value]." *Daugherty*, 254

20

Mont. at 484, 839 P.2d at 564. Further, *Daugherty* did not cite or discuss *Morgen*. However, the facts set forth in *Daugherty* recognize both that there was actual negotiation between the parties and that the parties' had relatively equal bargaining power.

¶41    *Daugherty* also upheld the district court's statements that to inquire into the actual damages would defeat the language of the contract. More to the point, because *Daugherty* upheld a summary judgment ruling, the opinion in effect held that there are no genuine issues of material fact involved in the determination of whether a liquidated damages clause should be declared a penalty.

¶42    Only three months later in *Weber*, we sharply departed from *Daugherty* without citing or discussing it. In *Weber*, we considered a form contract used to memorialize a land purchase which provided for 10% of the purchase price as liquidated damages. Citing the "all the facts and circumstances under which the contract was made" rule from *Morgen*, we held the provision was a penalty because there was no attempt by the parties to reasonably estimate anticipated damages. Specifically, we noted that because a form contract was used and both parties testified that no one knew how 10% of the purchase price was chosen, there was no evidence of actual negotiation between the parties so there was no attempt to reasonably estimate damages. We also held the provision a penalty because it entitled the sellers to the same amount whether they attempted to mitigate or not. *Weber,* 255 Mont. at 200-01, 841 P.2d at 537-38. *Cf. Wendy's of Montana v. Larsen* (1982), 196 Mont. 525, 529, 640 P.2d 464, 466 (bargained earnest money upheld as liquidated damages because buyer received benefit of the bargain when land was taken off the market for months).

21

¶43 While *Weber* questioned the language of the contract and required introduction of specific evidence unlike *Daugherty*, in one way *Weber* is similar to *Daugherty* because the opinion also rejected the actual damages test. The court stated:

> [A]ny relationship between the amount of actual damages suffered and the amount specified in the provision is merely a fortuitous coincidence and not the result of a reasonable estimate in advance to determine what the damages might be. The fact that the liquidated damage provision in this case may approximate the actual damages suffered, is insufficient by itself to create a valid liquidated damages provision. Our decision in *Morgen* . . . makes it clear that other factors must also be considered."

*Weber,* 255 Mont. at 201, 841 P.2d at 538. Therefore, by rejecting the actual damages test, *Weber* stands for the proposition that evidence of actual bargaining between the parties is required for form contracts.

¶44 After *Weber*, the next liquidated damages holding occurred in *Story v. City of Bozeman* (1993), 259 Mont. 207, 227-28, 856 P.2d 202, 214-15, another case involving a delay in construction liquidated damages provision. Rather than substantively consider the clause at issue, this Court disallowed the provision as a penalty purely as a matter of burden of proof. Because the party seeking to enforce the clause failed to present any proof that damages were extremely difficult or impracticable to ascertain or that the damages in the provision were reasonable in light of either anticipated or actual damages, we held the clause was a penalty. *Story*, 259 Mont. at 228, 856 P.2d at 215. Therefore, *Story* also contrasts with *Daugherty* and *Morgen* because rather than simply relying on the contract language like *Daugherty* or considering the nature of the bargaining process between the parties like *Morgen*, *Story* holds that any inquiry into a liquidated damages clause requires evidence

22

beyond the language of the contract. Further, this requirement virtually guarantees that genuine issues of material fact would preclude summary judgment contrary to the holding in *Daugherty*.[9]

¶45 As this discussion demonstrates, our precedent has both required and completely ignored proof that damages be of a type difficult to ascertain; it has relied on proof of actual damages to show reasonableness and it has rejected proof of actual damages to show reasonableness; it has considered actual bargaining as only one factor to be considered and it has held actual bargaining is required; finally, it has considered the penalty/liquidated damages issue as one that requires evidence and also one that is based on contract interpretation.

¶46 In sum, our precedent on liquidated damages has numerous inconsistencies that make application of a uniform rule elusive at best. Yet, in order to resolve the issue presented and provide direction to contracting parties, we must resolve the disparities in our case law. To that task we now turn.

### 4. Unconscionability

¶47 The above cases represent requirements that courts consider, to varying degrees, the difficulty of proof of damages, the anticipated and actual damages, evidence of intent or

---

[9]Since *Story,* two cases have considered liquidated damages clauses, *Yellowstone II Dev. Group, Inc. v. First Am. Title Ins. Co.*, 2001 MT 41, ¶ 70, 304 Mont. 223, ¶ 70, 20 P.3d 755, ¶ 70 and *Riverview Homes II, Ltd. v. Canton*, 2001 MT 309, ¶ 21, 307 Mont. 517, ¶ 21, 38 P.3d 848, ¶ 21. However, neither of these cases are relevant to the issue here because both are straightforward contract interpretation cases in which the court simply interpreted the language of the contract to see if and how the respective provisions even applied.

actual negotiation between the parties, and the nature of the bargaining process between the parties. However, as already discussed above, when the actual damages are difficult to prove, requiring proof of actual damages to demonstrate reasonableness puts the nonbreaching party in an unfair and untenable position. Further, requiring such proof defeats the efficiency of having such a clause in the first place. Indeed, by the rule from *Story*, any efficiencies gained from the clause are lost by automatically requiring extensive proof. Further, there may not be any evidence of actual negotiation between the parties due to the common use of form contracts. In addition, more than anything, proof of actual damages seems to be a convenient and comfortable way for a court to simply end the debate regarding a liquidated damages provision because the clause approximates the expectancy damages that a court would normally enforce anyway. At the same time, *Daugherty* represents the idea that the court simply enforce the contract language between the parties. However, such an approach simply ignores the penalty issue presented to a court.

¶48    After reviewing these cases, cases from other jurisdictions and academic writing on the subject, we conclude that the proper way to resolve the above inconsistencies is to analyze liquidated damages clauses from the perspective of whether or not the clause is unconscionable as indicated by the nature of the bargaining process between the parties. Unconscionability involves a two prong determination: whether the clause fits the doctrine of contract of adhesion such that the weaker bargaining party had no meaningful choice regarding acceptance of the provisions and whether the contractual terms are unreasonably favorable to the drafter, usually the party with superior bargaining power. *Iwen v. U.S. West*

24

*Direct*, 1999 MT 63, ¶¶ 27-31, 293 Mont. 512, ¶¶ 27- 31, 977 P.2d 989, ¶¶ 27-31.  Whether or not the clause is unreasonably favorable to the drafter in turn involves an inquiry into whether the clause is within the reasonable expectations of the weaker party or is unduly oppressive to the weaker party.  *Iwen*, ¶ 27.  We are persuaded that unconscionability analysis provides the proper framework for a number of reasons.

¶49    First, as outlined above, the principle of freedom of contract holds that the parties themselves are in the best position to determine the terms of a contract because the parties are free to get information and bargain the private law of the contract in their own interest. Under unconscionability, a court will only strike a contract term if the bargaining process itself had some inherent unfairness that actually prevented the contract from being freely negotiated and thus defeated the principle of freedom of contract.  Indeed, modern commentators on the subject of liquidated damages assert that unconscionability should be the only exception to court enforcement of liquidated damages clauses.[10] *See* DiMatteo, 733; Goetz, 594; David Brizzee, *Liquidated Damages and the Penalty Rule: A Reassessment*, 1991 BYU L. Rev. 1613, 1631-32 (hereinafter Brizzee).  In addition to providing clear precedent for contracting parties, the commentators point out that a presumption of enforcement will inevitably award proper damages to the nonbreaching party and will fulfill the promise of efficiency that liquidated damages can bring.  *See* DiMatteo, 655-706, 733; Goetz, 579-94; Clarkson, 357-78; Brizzee, 1617-31.  Using economic analysis, the leading

---

[10]This, of course, assumes that courts will also not enforce contracts void for illegality in contradiction to public laws.

25

authors also assert that enforcement is the appropriate way to provide for damages that are impractical or difficult to fix. *Id.* Given this presumption of enforcement, unconscionability looks at whether "[o]ppression and a disparity of bargaining power" warped the negotiation process between the parties such that a court should step in and reform the disputed contract term. *Estate of Michael v. Glacier Gen. Assurance Co.* (1994), 264 Mont. 261, 266, 871 P.2d 272, 275. If unfair oppression is found, a court is then well grounded in declaring a clause to be a penalty.

¶50 Second, unconscionability analysis is the proper approach because it in fact already mirrors the law of liquidated damages. Courts initially exercised equitable power to strike liquidated damages clauses when a more powerful party used its power to set terms that were unfair and allowed double recovery. Goetz, 554-55. That parallel between penalties and unconscionability lives on in today's case law. When courts look at evidence of intent and actual negotiation between two parties to decide if a clause is a penalty, courts are simply looking at whether the bargaining process was free or oppressive and whether the weaker party had a meaningful opportunity to negotiate terms. Whether damages would be difficult to prove, whether actual negotiation occurred, and whether or not actual damages approximate anticipated damages are all simply evidence of whether the bargaining process was consistent with the principle of freedom of contract such that the term was within the reasonable expectations of the weaker party.

¶51 The cases discussed above, while seemingly inconsistent, also show that unconscionability analysis is at the heart of the law of liquidated damages because each of

26

those cases demonstrate an underlying concern with the bargaining process. Even in *Daugherty*, though the trial court did not hear evidence on the issue of actual damages, the facts of the case make it apparent that the contract itself was negotiated between two sophisticated parties, neither of which could take advantage of the other in establishing the contract terms. *See also*, § 30-2-718, MCA, and § 30-2-320, MCA.

¶52    Third, by approaching liquidated damages from the perspective of unconscionability, future penalty questions can rely on our unconscionability jurisprudence. Specifically, precedence on form contracts and personal service contracts, issues both present in the case at bar, provide this Court with guidance on the fairness of the bargaining process. *See, e.g., Chor v. Piper, Jaffray & Hopwood, Inc.* (1993), 261 Mont. 143, 150, 862 P.2d 26, 30 (citation omitted) ("Contracts of adhesion arise when a standardized form of agreement, usually drafted by the party having superior bargaining power, is presented to a party, whose choice is either to accept or reject the contract without the opportunity to negotiate its terms.")

¶53    Finally, by focusing on the fairness of the bargaining process, courts will less likely be drawn into an "after the fact" debate, a situation which frequently occurs with liquidated damages clauses. And, as mentioned, enforcement of inherently fair contracts will in fact provide for damages that are impractical to prove.

¶54    Accordingly, under the rule we adopt today, liquidated damages clauses are presumed enforceable. Further, the party seeking to avoid the clause has the burden of proving the clause is unconscionable. As a result, we overrule *Story,* 259 Mont. at 228, 856 P.2d at 215,

27

to the extent it placed the burden on the nonbreaching party to prove a liquidated damages clause is enforceable. In addition, unless there are underlying disputed issues of fact, the question of whether a clause is unconscionable is purely a matter of law for a court to decide.[11]

¶55     While no specific evidence is required or is determinative of the ultimate issue of unconscionability, including evidence of intent, actual negotiation and whether there are damages, a court may consider any relevant evidence in its determination, including whether a clause attempts to waive the general duty to mitigate and whether a clause allows for the same damages without regard to the materiality of the breach. Because unconscionability considers, analogous to the statement in *Morgen*, "all the facts and circumstances under which the contract was made," we overrule *Daugherty* to the extent it prevented one party from introducing relevant evidence by granting summary judgment based on contract language alone. *Cf. 360 Ranch Corp. v. R & D Holding* (1996), 278 Mont. 487, 492, 926 P.2d 260, 263 (citation omitted) ("[S]ummary judgment is usually inappropriate where the intent of the contracting parties is an important consideration.").

¶56     To the extent *Morgen*, *Erickson*, *Ruegsegger*, *Weber*, *Daugherty* and any other liquidated damages cases address the nature of the bargaining process between the parties, those cases will continue to serve as precedent. To the extent those cases require a specific

---

[11]Because the question of whether a liquidated damages clause is unconscionable is an issue of law, the School correctly asserts Kinkie's characterization of the clause here as a penalty is not binding on this Court because judicial admissions are limited to facts and not issues of law. *DeMars v. Carlstrom* (1997), 285 Mont. 334, 338, 948 P.2d 246, 249

28

type of evidence, such as the actual damages noted in *Erickson* or the evidence of actual negotiation required by *Weber*, those cases are no longer binding. We note here, however, that this Opinion is not intended in any way to overrule *Comphealth*, 240 Mont. at 369, 783 P.2d at 1388, in that substantial rather than full compliance with contract terms can prevent an award of liquidated damages.

¶57    We also note in making this holding that it is not intended to address forfeiture under § 28-1-104, MCA,[12] because that issue, particularly as presented in contracts for deed, is not properly before us. *See*, *e.g.*, *Cook-Reynolds Co. v. Chipman* (1913), 47 Mont. 289, 133 P. 694 (liquidated damages clause considered enforceable but struck down anyway under anti-forfeiture statute.)

## C. The Arrowhead-Klyap Teaching Contract

¶58    Having determined that unconscionability will guide our review of liquidated damages issues, we now address the case at bar. Unlike employee wage claims for liquidated damages, *see Stewart v. Region II Child & Family Servs.* (1990), 242 Mont. 88, 94, 788 P.2d 913, 917 (citing § 39-3-407, MCA, and § 39-3-206, MCA), we have never addressed a liquidated damages clause in a personal service contract in Montana. Accordingly, we will consider analogous clauses that have been addressed in other jurisdictions. *See DeWerff*, 626 P.2d at 1208.

---

[12]Section 28-1-104, MCA, reads: **Relief from forfeiture**. Whenever by the terms of an obligation a party thereto incurs a forfeiture or a loss in the nature of a forfeiture by reason of his failure to comply with its provisions, he may be relieved therefrom upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty.

¶59     Under the unconscionability perspective, we first look to whether or not the clause at issue is a contract of adhesion such that the weaker bargaining party had no meaningful choice regarding acceptance of the provisions. *Iwen*, ¶ 31. This rule incorporates the liquidated damages inquiry into whether or not the parties actually negotiated the clause and whether the parties attempted to estimate anticipated damages. In this case, the School, like most employers, is the more powerful bargaining party. This is demonstrated by the fact that the teachers did not unionize, by the fact that there were 80 applicants for Klyap's position, and by the fact that the School presented Klyap with a form contract with his salary inserted into a fill-in-the-blank space. *But cf. Ryan v. Orris* (N.Y. App. Div. 1983), 95 A.D.2d 879 ($35,000 liquidated damages clause in doctor's employment contract was enforceable in part because parties freely negotiated the terms); *Ashcraft & Gerel v. Coady* (2001), 244 F.3d 948, 954-55 ($400,000 liquidated damages provision in attorney's employment contract enforceable).

¶60     Further, there is nothing of record to indicate Klyap had a meaningful choice regarding acceptance of the 20% of salary liquidated damages provision. Indeed, it appears that this provision was inserted on a take it or leave it basis. As discussed above, an employer offering a personal services contract usually prefers performance over contract damages because the particular employee's performance is the whole point of the contract. This is especially true with a teaching contract. "Resignations that are submitted by teachers and that are to be effective during the academic year obviously present severe problems for school administrators. They impose instructional problems for students and vexing

30

difficulties for the administration in obtaining qualified replacements." *Arduini II,* 441 N.E.2d at 77. Had Klyap attempted to negotiate the liquidated damages provision to a lower amount, the School would likely have rejected his proposal and simply hired a different teacher because the School would always prefer performance over contract damages. In addition, we doubt that most teachers not represented by a union have the wherewithal to negotiate at arms length with a Board of Trustees or superintendent in order to significantly change contract terms. Therefore, the clause in this case qualifies as a contract of adhesion.

¶61    We note at this point that our holding in *Weber* could be interpreted to require remand to the District Court because the contract at issue here is a form contract and there was no evidence of negotiation between the parties. However, unconscionability does not require that form contracts are automatically unacceptable. Rather, such contracts are only unconscionable if the terms are not within the reasonable expectation of the party who had no opportunity to negotiate.

¶62    Accordingly, we turn to the second, and more difficult, question of whether the liquidated damages clause in Klyap's contract was within Klyap's reasonable expectations or was unduly oppressive to Klyap. This inquiry incorporates the liquidated damages inquiry into whether or not the clause is *in terrorem* to force performance rather than estimate acceptable damages, whether damages were difficult to fix, and whether the liquidated damages approximated actual damages. *See John Jay Esthetic Salon, Inc. v. Woods* (La. Ct. App. 1983), 435 So.2d 1051, 1052 ($25,000.00 liquidated damages for hairdresser struck as penalty because employer took advantage of "vastly superior bargaining power" to set figure

so "unrealistic and unreasonable that it cannot be considered a good faith pre-estimate of probable damages.")

¶63 Our review of cases from other jurisdictions indicates that such clauses in teaching contracts have almost always been enforced as reasonable. *See DeWerff*, 626 P.2d at 1208-10 (clause required payment of a lump sum of $400 plus $75 per month of school year remaining in 1978 on any salary amount); *Bowbells Pub. Sch. Dist. v. Walker* (N.D. 1975), 231 N.W.2d 173, 174 (clause required 4% of salary or $252 in 1973); *Bottineau Pub. Sch. Dist. v. Zimmer* (N.D. 1975), 231 N.W.2d 178 (clause required $500 in 1973 on any salary); *National Educ. Ass'n v. Lee County Bd. of Pub. Instruction* (Fla. 1972), 260 So.2d 206 ($100 liquidated damages negotiated as part of end to work stoppage); *Arduini I*, 418 N.E.2d at 106 (4% of salary or $716 in 1979). In fact, our research found only one case in which a clause was struck down as unreasonable. *Independent Sch. Dist. v. Dudley* (Iowa 1923), 192 N.W. 261 (clause that amounted to $200 or 25% of salary struck as unconscionable penalty in 1923).

¶64 Further, the School in this case introduced other teaching contracts in Montana with liquidated damages clauses to show the clauses are within the reasonable expectations of teachers in Montana. These contracts included an Ashland teaching contract with a 15% clause, a Havre teaching contract with a 10% clause, and a Willow Creek contract with a $350.00 clause. School staff also testified that the clause was included in the Arrowhead contract at the recommendation of a representative of the Montana School Board Association who also testified. However, there was no testimony regarding how the specific figure of

32

20% was chosen.

¶65    As is evident from the above cases and the other Montana contracts introduced as evidence, none of the enforced liquidated damages provisions go as high as 20% of a teacher's salary.  In contrast, the *Dudley* case struck a 25% of salary clause as a penalty.  Therefore, we must determine where Klyap's 20% clause falls in the spectrum of reasonable expectations.

¶66    In doing so, we note that the normal rule governing employer damages for breach by an employee is that an employer is entitled to the cost of obtaining other services equivalent to those promised under the contract.  *Med+Plus Neck & Back Pain Ctr. v. Noffsinger* (Ill. App. Ct. 2000), 726 N.E.2d 687, 691.  In contrast, if it is more efficient for an employee teacher to breach a contract in order to take other employment, thus fulfilling the principle of efficient breach, nothing prohibits that teacher from doing so.  *See Handicapped Children's Educ. Bd. v. Lukaszewski* (Wis. 1983), 332 N.W.2d 774, 779 (efficient breach by a teacher); *Myers-Goldberg Neckwear Co. v. Grossman* (Mo. App. 1912), 151 S.W. 163, 164 (defendant quit "for the sole reason that he was offered employment at a higher rate by another concern.").

¶67    Consequently, it was within Klyap's reasonable expectations to compensate the School for the costs of obtaining a teacher who would provide services equivalent to his own.  It was also within Klyap's reasonable expectations that he agree to a contract that would be reasonably economically feasible to breach and pay a sum certain in order to end the contract.

¶68   After reviewing the facts of this case, we hold that while the 20% liquidated damages clause is definitely harsher than most, it is still within Klyap's reasonable expectations and is not unduly oppressive. First, as the School pointed out during testimony, at such a small school teachers are chosen in part depending on how their skills compliment those of the other teachers. Therefore, finding someone who would provide services equivalent to Klyap at such a late date would be virtually impossible. This difficulty was born out when only two applicants remained available and the School hired a teacher who was less experienced than Klyap. As a teacher, especially one with experience teaching at that very School, Klyap would have to be aware of the problem finding equivalent services would pose.

¶69   Second, besides the loss of equivalent services, the School lost time for preparation for other activities in order to attempt to find equivalent services. As the District Court noted, the School had to spend additional time setting up an interview committee and conducting interviews. Further, the new teacher missed all the staff development training earlier that year so individual training was required. And finally, because Klyap was essential to the sports program, the School had to spend additional time reorganizing the sports program as one sport had to be eliminated with Klyap's loss. These activities all took away from the other school and administrative duties that had been scheduled for that time. Further, as the District Court concluded, loss of equivalent services and lost time are types of damages impractical and difficult to quantify. Again, because Klyap was a teacher and because he initiated parts of the sports program, it was within his reasonable expectations to know the School would suffer these types of difficult to prove damages as a result of his

34

departure.

¶70    Finally, although the School testified it had an intent to secure performance and avoid the above damages by reason of the clause, as discussed above, such an intent does not turn a liquidated damages clause into a penalty unless the amount is unreasonably large and therefore not within reasonable expectations. Given that Klyap would understand the importance of a teacher committing to employment for at least the duration of a school year in order to give students continuity and given that the School's probable damages were within Klyap's reasonable expectations, we conclude that the 20% of salary figure was within Klyap's reasonable expectations as an estimation of damages the School would incur.

¶71    Therefore, because as a teacher Klyap would know teachers are typically employed for an entire school year and would know how difficult it is to replace equivalent services at such a small rural school, it was within Klyap's reasonable expectations to agree to a contract with a 20% of salary liquidated damages provision for a departure so close to the start of the school year.

¶72    In sum, although Klyap had no meaningful choice regarding the liquidated damages provision, the clause itself is still not unconscionable because the 20% amount was within Klyap's reasonable expectations as a teacher familiar with the employment needs of the School and the damages the School would suffer upon breach of the contract. Accordingly, we hold the District Court correctly determined that the liquidated damages provision was enforceable.

## IV. CONCLUSION

35

¶73    Because the District Court correctly determined the damages clause of the contract between Klyap and the School was enforceable as a liquidated damages provision, we affirm.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ JIM REGNIER

District Court Judge Loren Tucker, specially concurring.

¶74    I concur in the result reached by the Court but not in all of the reasoning.

¶75    By statute, liquidated damages are authorized in situations in which actual damages are difficult to determine.  The liquidated damages provision is designed to bring certainty to uncertain circumstances.  The parties to the contract are in the best position to make that determination.  Neither a contracting party nor the Court should be allowed to recreate uncertainty after the fact by second guessing the agreed terms.

¶76    Whether the agreement is a contract of adhesion is an issue separate from whether the parties have agreed to liquidated damages.  This issue need not be analyzed in every liquidated damages case.  It should be considered only when raised by the pleadings.

¶77    For these reasons, I concur with the result reached by the majority.


                                          /S/ LOREN TUCKER
                                          Hon. Loren Tucker, District Court Judge
                                          sitting for Justice W. William Leaphart

Chief Justice Karla M. Gray concurring in part and dissenting in part.

¶78 I concur in the result the Court reaches. I respectfully dissent, however, from the approach used by the Court to resolve this appeal.

¶79 I appreciate the care with which the Court sets forth our past decisions in the liquidated damages arena. Moreover, I fully support this Court's efforts in recent years to "square away" inconsistent or parallel lines of authority which cause ongoing difficulties for practitioners and trial courts. We generally, and properly, do so by analyzing why one line of authority is preferable and overruling other cases, in whole or in part, which are inconsistent therewith. *See, e.g., Quantum Elec., Inc. v. Schaeffer*, 2003 MT 29, 314 Mont. 193, 64 P.3d 1026; *State v. Hardaway*, 2001 MT 252, 307 Mont. 139, 36 P.3d 900; *In re Estate of Bradshaw*, 2001 MT 92, 305 Mont. 178, 24 P.3d 211; *State v. Montoya*, 1999 MT 180, 295 Mont. 288, 983 P.2d 937. In my view, we should continue that approach in the present case.

¶80 Here, the Court does not "square away" inconsistent lines of authority. It does not, as it indicates at ¶¶ 19 and 46, resolve the disparities in our case law on liquidated damages. Instead, the Court leaves the liquidated damages statute and our liquidated damages case law behind, and creates an entirely new approach to liquidated damages by incorporating case law from other contract settings, "cases from other jurisdictions and academic writing on the subject[.]"

¶81 I cannot agree. Neither party argued or briefed this approach in either the District Court or this Court. As I have stated many times before, I believe it is unwise and

40

inappropriate for this Court to create and apply a new approach to an issue in a vacuum--that is, without full argument from the parties. *See, e.g., Mallak v. State*, 2002 MT 35,¶ 32, 308 Mont. 314, ¶ 32, 42 P.3d 794, ¶ 32 (Gray, C.J., dissenting); *In re Parenting of J.N.P.*, 2001 MT 120, ¶¶ 30-33, 305 Mont. 351, ¶¶ 30-33, 27 P.3d 953, ¶¶ 30-33 (Gray, C.J., dissenting); *State v. LaMere*, 2000 MT 45, ¶¶ 79-82, 298 Mont. 358, ¶¶ 79-82, 2 P.3d 204, ¶¶ 79-82 (Gray, J., specially concurring); *State v. Worrall*, 1999 MT 55, ¶¶ 61-64, 293 Mont. 439, ¶¶ 61-64, 976 P.2d 968, ¶¶ 61-64 (Gray, J., concurring and dissenting); *Craig v. Schell*, 1999 MT 40, ¶¶ 47-50, 293 Mont. 323, ¶¶ 47-50, 975 P.2d 820, ¶¶ 47-50 (Gray, J., dissenting). For this Court to proceed in such a fashion not only ignores the parties whose case is before us on appeal, it also ignores the findings of fact and conclusions of law entered by the trial courts whose work we are supposed to be reviewing.

¶82     How can we reconcile refusing to address an issue or theory raised by a *party* for the first time on appeal–*see, e.g., Bryan v. Yellowstone Co. Elem. Sch. Dist. No. 2,* 2002 MT 264, ¶ 19, 312 Mont. 257, ¶ 19, 60 P.3d 381, ¶ 19; *Bekkedahl v. McKittrick*, 2002 MT 250, ¶¶ 31-32, 312 Mont. 156, ¶¶ 31-32, 58 P.3d 175, ¶¶ 31-32; *In re Estate of Bradshaw*, 2001 MT 92, ¶ 33, 305 Mont. 178, ¶ 33, 24 P.3d 211, ¶ 33; *Pearson v. Virginia City Ranches Ass'n*, 2000 MT 12, ¶¶ 57-58, 298 Mont. 52, ¶¶ 57-58, 993 P.2d 688, ¶¶ 57-58; *State v. Stewart*, 2000 MT 379, ¶ 30, 303 Mont. 507, ¶ 30, 16 P.3d 391, ¶ 30; *Baldauf v. Arrow Tank and Engineering Co.,* 1999 MT 81, ¶ 48, 294 Mont. 107, ¶ 48, 979 P.2d 166, ¶ 48; *State v. Brown*, 1999 MT 133, ¶¶ 19-20, 294 Mont. 509, ¶¶ 19-20, 982 P.2d 468, ¶¶ 19-20; *Johnson v. Barrett*, 1999 MT 594, ¶ 18, 295 Mont. 254, ¶ 18, 983 P.3d 925, ¶ 18; *State v. Sattler*,

1998 MT 57, ¶¶ 47-48, 288 Mont. 79, ¶¶ 47-48, 956 P.2d 54, ¶¶ 47-48; *Unified Industries v. Easley*, 1998 MT 145, ¶¶ 15-18, 289 Mont. 255, ¶¶ 15-18, 961 P.2d 100, ¶¶ 15-18; *State v. Adams* (1997), 284 Mont. 25, 31, 943 P.2d 955, 958-59; *Jones v. City of Billings* (1996), 279 Mont. 341, 347, 927 P.2d 9, 13; *Buhr v. Flathead County* (1994), 268 Mont. 223, 237-38, 886 P.2d 381, 389-90–with raising an entirely new approach to a question of law ourselves and then applying it to a pending appeal?  How can we reconcile requiring parties to advance authority for their arguments on appeal and refusing to consider arguments not so supported–*see, e. g.,* Rule 23(a)(4), M.R.App.P.; *Saari v. Winter Sports, Inc.*, 2003 MT 31, ¶ 14, 314 Mont. 212, ¶ 14, 64 P.3d 1038,¶ 14; *State v. Strauss*, 2003 MT 195, ¶ 51, 317 Mont. 1, ¶ 51, 74 P.3d 1052, ¶ 51; *In re Marriage of Clark*, 2003 MT 168, ¶ 25, 316 Mont. 327, ¶ 25, 71 P.3d 1228, ¶ 25; *In re Marriage of McMahon*, 2002 MT 198, ¶¶ 5-6, 311 Mont. 175, ¶¶ 5-6, 53 P.3d 1266, ¶¶ 5-6; *In re Estate of Spencer*, 2002 MT 304, ¶ 20, 313 Mont. 40, ¶ 20, 59 P.3d 1160, ¶ 20; *State ex rel. Mazurek v. District Court*, 2000 MT 266, ¶ 31, 302 Mont. 39, ¶ 31, 22 P.3d 166, ¶ 31; *State v. Anderson*, 1999 MT 60, ¶ 21, 293 Mont. 490, ¶ 21, 977 P.2d 983, ¶ 21; *State ex rel. Booth v. District Court,* 1998 MT 344, ¶ 35, 292 Mont. 371, ¶ 35, 972 P.2d 325, ¶ 35; *State v. Sol* (1997), 282 Mont. 69, 76, 936 P.2d 307, 311; *Rieman v. Anderson* (1997), 282 Mont. 139, 147, 935 P.2d 1122, 1126-27; *Small v. Good* (1997), 284 Mont. 159, 163, 943 P.2d 1258, 1260;  *State v. Carter* (1997), 285 Mont. 449, 461, 948 P.2d 1173, 1180–with then ignoring the parties' supported arguments and striking out on our own "new and improved" approach to the law?  I simply cannot understand

42

having rules that apply to parties and trial courts and refusing to hold ourselves to the same kinds of rules.

¶83    "[I]t is our obligation to decide the cases filed in this Court on the basis of the issues and argument raised by the parties." *State v. Zabawa* (1996), 279 Mont. 307, 318, 928 P.2d 151, 158 (Nelson, J., specially concurring).  In the present case, I would do just that.  I would reinvigorate the *Morgen* line of cases as the better reasoned line of precedent relating to liquidated damages, apply it to this case, and affirm the District Court on that basis.  Thus, while dissenting from the Court's rationale, I concur in the result reached.


/S/ KARLA M. GRAY

Justice James C. Nelson specially concurring.

¶84 The dissent asserts the majority Opinion fails to properly resolve our inconsistent lines of authority and raises a new approach to the question presented on appeal. This criticism is not well taken for five reasons.

¶85 First, Klyap did raise this approach on appeal. Klyap strongly urged this Court to consider the liquidated damages clause unenforceable because it is "oppressive" and because it is "more in line with an eighteenth century indentured servitude agreement." Unconscionability is simply the proper legal term used to characterize this argument that a contract term should be stricken by a court due to fundamental unfairness in the bargaining process. Accordingly, the Opinion carefully considers whether or not the clause is actually unconscionable.

¶86 Second, as is apparent from the lack of discussion in the Opinion, the trial court made minimal findings of fact and conclusions of law regarding the issue presented. Rather, the trial court simply made conclusory statements that the contract clause did not violate the statute. The court failed to articulate reasoning as to why it drew the conclusions of law it reached. Further, the District Court did not address the disparity in our case law. Therefore, the Opinion in no way ignores or fails to review the District Court's conclusions of law.

¶87 Third, the dissent does not explain how the result reached is correct under the applicable *Morgen* line of cases. Specifically, as Klyap argues, under *Weber*, the clause at issue here should be stricken because it is a form contract with no evidence entered as to how the amount of 20% of salary was chosen. Yet, as the Opinion discusses at length,

44

encouraging performance is a legitimate use of a liquidated damages clause by an employer. Accordingly, the School's wish to encourage performance by contracting teachers is not enough reason alone to strike the clause. Rather, as the Opinion considers at length, we have to consider whether the clause encourages performance unfairly by taking advantage of a superior bargaining position.

¶88 Fourth, the dissent believes this is a new approach. I disagree. Rather, our approach is simply a way of discussing the issue of liquidated damages that reveals our reasoning to practitioners and trial courts, rather than presenting a result-oriented decision that continues the disparity in our case law.

¶89 Fifth, our resolution provides exactly the kind of clear direction that contracting parties conducting business in Montana need regarding liquidated damages clauses. Our present case law, regardless of the statute, is inconsistent and confusing at best.

_____

Justice

45