No. 01-001

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 309

RIVERVIEW HOMES II, LTD., a Montana Limited Partnership,

Plaintiff and Appellant,

v.

JIM CANTON, a/k/a JAMES CANTON, and "all other persons,

unknown claiming or who might claim any right, title, estate or

interest in or lien or encumbrance upon the real property described

in the complaint adverse to Plaintiff's ownership or any cloud upon

Plaintiff's title thereto, whether such claim or possible claim be present

or contingent,"

Defendant, Counter-Claimant, Third Party Plaintiff, and Respondent,

v.

MICHA PROPERTIES, INC., and JON WEMPLE, Individual and

as Agent for RIVERVIEW HOMES II, LTD., and MICHA PROPERTIES,

INC.,

Third Party Defendants.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

W. Arthur Graham, Sullivan, Tabaracci & Rhoades, P.C., Missoula, Montana

For Respondent:

Susan Ridgeway, Attorney at Law, Missoula, Montana

Milton Datsopoulos, Datsopoulos, MacDonald & Lind, Missoula, Montana

Submitted on Briefs: August 30, 2001

Decided: December 31, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The original Plaintiff, Riverview Homes II, Ltd., filed this action in the District Court for the Twenty-First Judicial District in Ravalli County to quiet title to a twenty-acre parcel pledged by the Defendant, Jim Canton, as security in the event Canton breached his contractual obligation to complete a proposed subdivision and construct a man-made lake. The District Court found that Canton breached the contract, yet concluded the contract remedy violated the Montana Subdivision and Platting Act and was an unenforceable liquidated damages provision. The District Court subsequently awarded Riverview monetary damages in the amount of $92,046 plus interest and attorney fees. Riverview appeals both the District Court's conclusion that the contract remedy was void as a matter of law and, in the alternative, the amount of damages awarded. We affirm the judgment of

the District Court.

¶2 The following issues are presented on appeal:

¶3 1. Did the District Court err when it concluded the contract remedy provision violated the Montana Subdivision and Platting Act?

¶4 2. Did the District Court err when it concluded the contract remedy provision was an unenforceable liquidated damages provision?

¶5 3. Did the District Court err in its calculation of the amount of monetary damages?

## FACTUAL BACKGROUND

¶6 On September 3, 1993, Riverview Homes II, a limited partnership, and Jim Canton, an individual, entered into a contract for the sale and purchase of real property. Pursuant to the terms of the contract, Riverview agreed to purchase three lots in a previously approved and platted subdivision known as River Bend No. 1, and six one-acre lots in a proposed subdivision located in an adjacent twenty-acre tract to be called River Bend No. 2. Neither the six lots nor the twenty-acre tract had been submitted for county review and approval at the time the parties entered the contract. The contract provided for a purchase price of $279,000. Riverview paid $82,500 prior to closing, and $77,500 at closing. The remaining balance of $119,000 was to be paid upon Canton's completion of the River Bend No. 2 subdivision and the construction of a man-made lake within that subdivision. These contractual obligations were to be completed by May 1, 1994, with the remaining balance to bear interest at nine percent until that date. The parties later agreed to extend the deadline for completion to November 1, 1994.

¶7 The contract for deed set forth remedies available to Riverview in the event Canton failed to obtain final plat approval for River Bend No. 2 or complete the man-made lake. Paragraph 6 of the contract for deed provided:

> Additional Security: The SELLER hereby grants BUYER an assignment of BUYER'S interest for security purposes only and a Quitclaim Deed on the twenty (20) acres described on Exhibit "B". The security shall give the BUYER a priority position subject only to the first priority position identified in Section 7 of this Agreement on said twenty (20) acre parcel until such time as the SELLER

completes all necessary state and county requirements and obtains the recordation of the new proposed River Bend No. 2 subdivision including the additional six (6) lots as described on page 1 of this agreement. The parties hereto agree that Seller's completion of said state and county requirements and the requirements contained in this agreement shall be valued at Two Hundred Thousand Dollars ($200,000.00). In addition, SELLER shall complete the man-made lake which SELLER is in the process of building.

Paragraph 6 was supplemented with Paragraph 23:

DEFAULT BY SELLER: Time is of the essence and should SELLER be unable to complete the construction of the man-made lake prior to May 1, 1994, the BUYER, at BUYER'S option, may consider such a failure a default of SELLER by providing written notice of such default to SELLER stating that SELLER shall have thirty (30) days from the mailing of said notice in which to cure said default, by completing the construction of the man-made lake as required herein. In the event the SELLER fails to cure said default within said time period, the BUYER, at BUYER'S option, may commence foreclosure proceedings on the property previously described and given to BUYER as security for compliance of SELLER'S obligation. Further, in the event of default, at the BUYER's option, the BUYER may record the Quitclaim Deed or foreclosure upon the assignment of BUYER's interest for security purposes.

Together, the contract provisions permitted Riverview to either commence foreclosure proceedings or record the quitclaim deed to the twenty-acre parcel as the remedy in the event of Canton's breach. The twenty-acre parcel included property subject to the purchase agreement but other property as well.

¶8 On August 13, 1997, Riverview sent Canton a notice of default. In September of 1997, Riverview received from escrow the deed conveying the twenty-acre tract from Canton to Riverview. Riverview attempted to record the deed, but the Ravalli County Clerk and Recorder refused to file it because such transfers required subdivision approval. In October of 1998, Riverview commenced a quiet title action to receive title to the twenty-acre parcel, based on the contract remedy provision.

¶9 Following a four-day trial, the District Court entered its Findings of Fact, Conclusions of Law and Order on March 23, 2000. It concluded that Canton had breached his contractual obligation to complete the subdivision and construct the man-made lake.

However, the District Court declared the contract remedy void because it violated § 76-3-302, MCA, of the Montana Subdivision and Platting Act. Furthermore, it concluded that the parties' valuation of the requirements that the seller was obligated to complete was an unenforceable liquidated damages provision.

¶10 The District Court then ordered a hearing to determine the appropriate amount of monetary damages to be awarded to Riverview for Canton's breach of contract. The hearing was held on July 6, 2000. After hearing expert testimony on damages, the District Court awarded $92,046 to Riverview, plus interest and attorney fees. The award was based on "scenario one" as testified to by Canton's expert witness, Steve Hall, a licensed and certified appraiser. Under scenario one, the District Court assumed that the lots would have been received by Riverview as of November 1, 1994, and sold as bare lots without homes. After determining the amount of net profit and accounting for present value, the District Court arrived at the $92,046 award.

¶11 On September 14, 2000, the District Court entered its final judgment in favor of Riverview, with the addition of attorney fees in the amount of $42,500. Riverview filed a Notice of Appeal on September 27, 2000, from the District Court's judgment. Specifically, it contends that the agreed upon contract remedy was enforceable, and, in the event it was not, that the District Court failed to award monetary damages in an amount which compensates Riverview for all of the detriment actually caused by Canton's default. Canton filed a cross-appeal of the District Court's order which was subsequently withdrawn.

## STANDARD OF REVIEW

¶12 The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686. The standard of review of a district court's findings of fact is whether those findings are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906.

## DISCUSSION

## ISSUE 1

¶13 Did the District Court err when it concluded the contract remedy provision violated

the Montana Subdivision and Platting Act?

¶14 Riverview contends that the transfer of the twenty-acre parcel pledged by Canton as security for his contractual obligations does not violate the Montana Subdivision and Platting Act. The Act generally requires that all transfers of land comprising less than 160 acres undergo subdivision plat review prior to transfer. *See* §§ 76-3-104, -301, -302, MCA. However, pursuant to § 76-3-201(1)(b), MCA, certain divisions of land are exempted:

> **Exemption for certain divisions of land.** (1) Unless the method of disposition is adopted for the purpose of evading this chapter, the requirements of this chapter may not apply to any division of land that:
>
> . . .
>
> (b) is created to provide security for construction mortgages, liens, or trust indentures; . . . .

Riverview contends that the security provision in the contract was, in effect, a "construction lien" as contemplated in § 76-3-201(1)(b), MCA. It relies on the definition of "lien" found at § 71-3-101(2), MCA, of the general lien statute, as well as the definition of "construction" from Webster's dictionary. Section § 71-3-101(2), MCA, provides in pertinent part:

> A "lien" is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act.

Because the twenty-acre parcel was given as security in part for Canton's obligation to construct a man-made lake, Riverview argues a construction lien was created, and § 76-3-201(2), MCA, of the Montana Subdivision and Platting Act was applicable. Therefore, the District Court erred in its interpretation of the law.

¶15 The District Court concluded that despite Canton's agreement to pledge interest in the land, the twenty-acre parcel was not transferable pursuant to § 76-3-302, MCA, and failed to qualify for any applicable exceptions. The Court explained:

> [I]t would be contrary to good public policy to allow parties to evade the provisions

of the Subdivision and Platting Act by simply contracting to create divisions of land such as this for purposes other than to provide security for construction mortgages, a recognized exemption provided by law.

¶16 Given the specificity of the exemption under § 76-3-201(2), MCA, we must decide whether a "construction lien" existed, not whether a general "lien" existed pursuant to § 71-3-101(2), MCA. To enforce a construction lien, one must satisfy the requirements applicable to construction liens found in Title 71, Chapter 3, Part 5, MCA. Only those who furnish services or materials pursuant to a real estate improvement contract may claim a construction lien. § 71-3-523, MCA. Furthermore, certain steps are required to perfect and enforce construction liens, such as notice pursuant to § 71-3-531, MCA, and recordation pursuant to § 71-3-535, MCA. Riverview neither furnished services or materials to Canton for completion of the man-made lake, nor satisfied any other requirement applicable to construction liens in Title 71, Chapter 3, Part 5, MCA. Therefore, Riverview's construction lien theory lacks merit.

¶17 Riverview contends that the exemption for "construction mortgages, liens, or trust indentures" is not limited to construction liens as defined in Title 71, Chapter 3, Part 5, MCA. We disagree. If it is not a construction lien as defined by statute, it is a general lien pursuant to § 71-3-101(2), MCA. General liens are looked upon with disfavor. *Reiter v. Reiter* (1989), 237 Mont. 220, 222, 772 P.2d 314, 315. In the absence of an express agreement to give a lien, as is the case here, a general lien "can be claimed only as arising from dealings in particular trades or businesses in which the existence of a general lien has been recognized by judicial decisions or where a custom to that effect can be established by evidence." *Reiter*, 237 Mont. at 222, 772 P.2d at 315 (*quoting Deitchman v. Korach* (Ill. App. Ct. 1947), 71 N.E.2d 367, 369). In *Reiter*, we refused to recognize a general lien for breach of contract to provide equity in land. 237 Mont. at 222, 772 P.2d at 315. We similarly decline to recognize a general lien in this case.

¶18 Accordingly, we affirm the District Court's conclusion that the twenty-acre parcel was not a transferable parcel pursuant to § 76-3-302, MCA, of the Montana Subdivision and Platting Act, and failed to qualify for any applicable exception.

## ISSUE 2

¶19 Did the District Court err when it concluded the contract remedy provision was an unenforceable liquidated damages provision?

¶20 The District Court first concluded that the twenty-acre parcel was not transferable because of the Montana Subdivision and Platting Act. Given that conclusion, the District Court then reexamined the contract for another possible method to determine the appropriate amount of damages. Upon that examination, the Court noted the following language in Paragraph 6:

> The parties hereto agree that Seller's [Canton's] completion of said state and county requirements and the requirements contained in this agreement shall be valued at Two Hundred Thousand Dollars ($200,000.00).

It then concluded: "This would appear to constitute a contractual provision by which the amount of damage to be paid for breach of Canton's obligations was determined in anticipation of his possible breach, i.e., a liquidated damages provision." Given that determination, the District Court analyzed the provision as a liquidated damages provision in light of § 28-2-721, MCA. Section 28-2-721, MCA, provides:

> **When provision fixing liquidated damages valid.** (1) Every contract by which the *amount of damage to be paid or other compensation to be made* for a breach of an obligation is determined in anticipation thereof is to that extent void, except as expressly provided in subsection (2).
>
> (2) The parties to a contract may agree therein upon an amount which shall be presumed to be an amount of damage sustained by a breach thereof when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage. [Emphasis added.]

¶21 Riverview contends that the provision in Paragraph 6 is not a liquidated damages provision, because the parties did not agree on the amount of compensation or damages to be paid by Canton to Riverview. Therefore, § 28-2-721(1), MCA, does not apply. We agree. The provision sets forth a value for Canton's completion of certain tasks, it does not give Riverview the right to collect $200,000 from Canton. However, neither did Riverview contend that it should be awarded the $200,000 amount set forth in Paragraph 6. Therefore, the District Court's discussion regarding liquidated damages was not essential to the resolution of the parties' claims and we move on to its actual award of damages.

## ISSUE 3

¶22 Did the District Court err in its calculation of the amount of monetary damages?

¶23 After concluding that the contract remedy was void as a matter of law, the District Court held a hearing to determine the actual damages suffered by Riverview as a result of Canton's breach.

¶24 Riverview asserts that the amount of expectancy damages awarded by the District Court was insufficient to compensate Riverview for all the detriment actually caused by Canton's breach. It contends that the District Court failed to account for the profit that Riverview would have received from the sale of lots with homes, as opposed to bare lots.

¶25 The District Court carefully considered three methods for calculating damages. With "scenario one," the Court looked to the contractual assumptions of the parties and added an assumption that the lots would have been received by Riverview as of November 1, 1994, and sold as bare lots without homes. From that assumption, the Court determined that Riverview's losses ranged from $92,046 to $120,445, depending on whether a 12 or 14 percent rate of return was realized. The District Court based its award of damages on scenario one, and awarded $92,046. Neither party gave serious consideration to scenario two as a viable damage alternative.

¶26 Riverview contends that "scenario three" was the appropriate measure of damages. In scenario three, the Court would consider the future value of the money Riverview paid to Canton, and from which it received no benefit. At closing, Riverview had paid Canton $160,000 of the $279,000 purchase price. From that $160,000, $84,500 was for the three lots in River Bend No. 1. The remaining $75,500 was paid in anticipation of the completion of the subdivision and the construction of the man-made lake. Therefore, Riverview contends that since September 3, 1993, Canton reaped the benefits of the $75,500 without fulfilling its obligations. As a result, Riverview claims that it is entitled to the original $75,500, plus a reasonable return on that investment to the time of the hearing. That amount would be $143,586 at 12 percent or $187,884 at 14 percent.

¶27 For breach of an obligation arising from a contract, the appropriate measure of damages is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would likely result therefrom. § 27-1-311, MCA. Damages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of contract. § 27-1-311, MCA. Furthermore, no person can recover a greater amount of damages for a contract breach

than would be gained by full performance unless a greater recovery is specified by statute. § 27-1-303, MCA.

¶28 In contract actions, lost profits will be allowed only if the loss is proven with a reasonable degree of certainty. 22 Am Jur. 2d *Damages* § 624 (1988). Lost profits may be awarded if the loss is shown to be the "natural and direct result of the act of the defendant" and if the loss is not speculative. *Topco, Inc. v. State Dept. of Highways* (1996), 275 Mont. 352, 361, 912 P.2d 805, 810. The prohibition against speculative profits applies to the uncertainty about "whether the loss of profits is the result of the wrong and whether such profit would have been derived at all." *Topco*, 275 Mont. at 352, 912 P.2d at 810-11 (*quoting Olson v. Parchen* (1991), 249 Mont. 342, 348, 816 P.2d 423, 427). In this case, no evidence was presented regarding lost profits attributable to Riverview's inability to sell developed lots. Riverview opted not to introduce evidence establishing the size of the houses to be built, the quality of the houses, or other relevant features which would impact lost profits. Riverview has the burden to prove such lost profits, and failed to do so. Instead, Riverview opted to argue that establishing such profits was impossible.

¶29 After review of the record, we agree that scenario one is the most appropriate measure of damages. If the contract had been fully performed, Riverview would have had six bare lots, approved as a subdivision by the appropriate government entities, and a man-made lake. Because of Canton's breach, Riverview had neither. Given the lack of evidence presented, the District Court was left with limited options for determining damages, and found the "most reasonable estimate of damages" given the scenarios presented. Scenario one best accounts for the expectations of the parties at the signing of the contract. In determining expectancy damages and lost profits, this Court has not previously used the future value of held monies as an appropriate measure of damages, and we decline the opportunity to do so here. Because there is substantial evidence to support the District Court's finding that scenario one is the most reasonable measure of damages, we conclude that the District Court did not err.

¶30 As a final matter, Canton requests this Court to award his costs and attorney fees incurred on appeal as the prevailing party pursuant to the contract. The contract provides:

> In case suit or action is instituted to enforce compliance with any of the terms, covenants or conditions of this Agreement, there shall be paid to the prevailing party in such suit or action such sum as the Court may adjudge as reasonable attorney's fees and, in the event any appeal is taken from any judgment or decree in such suit

or action, the prevailing party on such appeal likewise shall recover from the other party costs and reasonable attorney's fees on such appeal.

Therefore, Canton, as the prevailing party on appeal, is entitled to costs and attorney fees. We remand to the District Court for a determination of those costs and fees.

¶31 Accordingly, we affirm the judgment of the District Court and remand for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

Justice Patricia O. Cotter respectfully dissents.

¶32 I believe the District Court erred when it concluded that the contract remedy provision violated the Montana Subdivision and Platting Act. Accordingly, I would have granted the plaintiff's request to quiet title to the twenty-acre parcel pledged by Canton as security in the event Canton breached his contractual obligations.

¶33 Section 76-3-201(1)(b), MCA, exempts from subdivision regulations, divisions of land that are ". . . created to provide security for construction mortgages, liens, or trust indentures . . . ." The majority concludes that the word "lien" must be construed to mean a "construction lien." I disagree. The statute references "construction mortgages" and "liens" separately; nowhere does it mention "construction liens." The majority then goes on to say it will not recognize a general lien, absent an express agreement to give a lien in the first place. Here, there was an express agreement to give a lien, as "lien" is defined at § 71-3-101(2), MCA, in Paragraph 23 of the Contract for Deed. The seller expressly gave the buyer a quit-claim deed on the twenty acres, as and for security for performance of an act, and gave the buyer the option to commence foreclosure proceedings on the property

should he default. I would give Riverview Homes the benefit of these contractual provisions negotiated between the parties.

¶34 The introductory language of § 76-3-201(1), MCA, allows a lien to be exempted from the provisions of the chapter "[u]nless the method of disposition is adopted for the purpose of evading this chapter . . . ." There was no finding by the District Court that the parties purposely intended to evade the requirements of the subdivision chapter. Therefore, I would conclude that a valid lien was created, that the lien was not intended to evade the subdivision requirements, and that the plaintiff had the right to quiet title to the twenty-acre parcel pledged by Canton as security. I would therefore find that the contract remedy did not violate the Montana Subdivision and Platting Act, and would order remand for purposes of quieting title to the twenty-acre parcel in the name of Riverview Homes. I would accordingly not reach issues two or three.

/S/ PATRICIA COTTER

Justice Jim Rice joins in the foregoing dissent of Justice Cotter.

/S/ JIM RICE