Justice Jim Rice delivered the Opinion of the Court.
***435 ¶1 Lisa Warrington (Warrington) appeals an order granting partial summary judgment to Great Falls Clinic, LLP (the Clinic), and challenges jury instructions given by the District Court at trial. The Clinic cross-appeals the District Court's denial of its trial motion for judgment as a matter of law, the $ 220,000 in damages awarded by the jury on Warrington's breach of contract claims, and asserted trial evidentiary errors. We affirm the appeal and cross appeal, and restate the parties' issues as follows:
1. Did the District Court err by granting partial summary judgment to the Clinic on Warrington's tort claim for breach of the covenant of good faith and fair dealing, and by denying Warrington's proposed instructions on her other tort claims?
2. Did the District Court err by admitting evidence of the Clinic's liability and Warrington's emotional distress?
3. Did the District Court err by denying the Clinic's motion for judgment as a matter of law regarding Warrington's damages?
4. Did the District Court err by failing to rule and instruct the jury that the contract was for a one-year term pursuant to § 39-2-602(1), MCA ?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 In 2014, after working at Benefis Hospital in Great Falls for approximately 22 years, Warrington applied for a job with the Clinic as a clinical manager. This position paid a higher annual salary than her job at Benefis, in addition to benefits. The Clinic offered the job to Warrington on October 7, and she accepted the next day. Warrington then notified Benefis that her last day of work would be Friday, October 24. On October 10, Warrington signed a written employment contract for an indefinite term with the Clinic, and the parties agreed that Warrington would begin work there on October 27.
¶3 On October 24, Warrington's last day at Benefis, the Clinic called Warrington and advised it would not be employing her after all. The Clinic would not provide a reason for withdrawing its offer of employment. Later, the Clinic indicated that Benefis officials had informed the Clinic that Warrington would not be a good fit for the ***436 Clinic. In actuality, a Clinic employee who formerly worked at Benefis had opined to the Clinic that Warrington would not be a good fit there. Warrington tried to return to her former job at Benefis, but Benefis would not re-hire her. Ultimately, Warrington moved to Helena to take fulltime employment there.
¶4 Warrington brought this action against the Clinic for breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel. After discovery, the District Court entered partial summary judgment against the Clinic, holding it had breached the employment contract with Warrington and that the Wrongful Discharge from Employment Act (WDEA) did not apply, because the case involved an executory contract. The Clinic petitioned this Court for *373 supervisory control, arguing the District Court was proceeding under a mistake of law. This Court affirmed the District Court's summary rulings that the WDEA did not apply and the Clinic had breached the contract, and remanded the matter "for further proceedings consistent with" our order. Great Falls Clinic LLP v. Mont. Eighth Judicial Dist. Ct. , 2016 MT 245, ¶¶ 4, 13-15, 17, 385 Mont. 95, 381 P.3d 550.
¶5 On remand, Warrington moved for partial summary judgment on her tort claim for breach of the covenant of good faith and fair dealing to establish as a matter of law that the requisite "special relationship" existed to support the claim, see Story v. Bozeman , 242 Mont. 436, 791 P.2d 767 (1990) ( Story I ), for which she sought damages for emotional distress, loss of enjoyment of life, embarrassment, anxiety, and punitive damages. The District Court concluded Warrington could not satisfy the elements of a special relationship, and granted summary judgment in favor of the Clinic on the issue, ruling that "if the jury does conclude that the Clinic breached the implied covenant, Ms. Warrington can recover her contract expectancy damages but not tort damages." The District Court denied Warrington's request to amend her complaint to add additional tort claims, including negligence, negligent and intentional infliction of emotional distress, and wrongful failure to employ, and, accordingly, did not instruct the jury on any of Warrington's tort claims or on punitive damages.
¶6 During trial, the District Court admitted evidence offered by Warrington to which the Clinic objected as beyond the issues to be tried under the court's rulings. The court also denied the Clinic's motion for judgment as a matter of law on Warrington's damages and rejected the Clinic's proposed jury instruction regarding the term of employment contract. The jury awarded Warrington $ 220,000 in contract damages.
***437 ¶7 Warrington appeals the District Court's grant of summary judgment in favor of the Clinic on her claim for breach of the covenant of good faith and fair dealing, and the denial of her instructions regarding her other tort claims. The Clinic cross-appeals the evidentiary rulings made by the District Court, including admission of evidence that went beyond the court's pre-trial rulings, the court's denial of its motion for judgment as a matter of law, and the court's denial of its proposed instruction regarding the contract term.
STANDARD OF REVIEW
¶8 "We review a district court's ruling on summary judgment de novo, to determine whether it is correct, using the same standards as the district court under M. R. Civ. P. 56." Great Falls Clinic LLP , ¶ 7. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits demonstrate that no genuine issue exists as to any material fact and that the party moving for summary judgment is entitled to judgment as a matter of law. We view the evidence in the light most favorable to the party opposing summary judgment, and we draw all reasonable inferences in favor of the party opposing summary judgment." Modroo v. Nationwide Mut. Fire Ins. Co. , 2008 MT 275, ¶ 19, 345 Mont. 262, 191 P.3d 389 (internal citations and quotations omitted).
¶9 We review a district court's grant or denial of a motion for judgment as a matter of law de novo. Patch v. Hillerich & Bradsby Co. , 2011 MT 175, ¶ 11, 361 Mont. 241, 257 P.3d 383. "Judgment as a matter of law is appropriate only when, considering all evidence and any legitimate inferences that might be drawn from the evidence in a light most favorable to the non-moving party, there is a complete lack of evidence that would justify submitting an issue to the jury." Patch , ¶ 24.
¶10 We review jury instructions for an abuse of discretion. Cechovic v. Hardin & Assocs. , 273 Mont. 104, 116, 902 P.2d 520, 527 (1995). When reviewing a trial court's decision regarding jury instructions, we consider the "instructions in their entirety and in connection with other instructions given and the evidence introduced at trial." Story v. City of Bozeman , 259 Mont. 207, 222, 856 P.2d 202, 211 (1993) ( Story II ) (overruled in part by *374 Arrowhead Sch. Dist. No. 75 v. Klyap , 2003 MT 294, ¶ 54, 318 Mont. 103, 79 P.3d 250 ). A trial court's refusal to give an offered instruction only constitutes reversible error when "such refusal affects the substantial rights of the party proposing the instruction, thereby prejudicing him." ***438 Busta v. Columbus Hosp. , 276 Mont. 342, 360, 916 P.2d 122, 132 (1996). The party assigning error must show prejudice. Tarlton v. Kaufman , 2008 MT 462, ¶ 19, 348 Mont. 178, 199 P.3d 263. If "the jury instructions in their entirety state the applicable law of the case," we will not find prejudice. Peterson v. St. Paul Fire & Marine Ins. Co. , 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904.
¶11 "We review evidentiary rulings for abuse of discretion." State v. Bonamarte , 2009 MT 243, ¶ 13, 351 Mont. 419, 213 P.3d 457 (citations omitted).
DISCUSSION
¶12 1. Did the District Court err by granting partial summary judgment to the Clinic on Warrington's tort claim for breach of the covenant of good faith and fair dealing, and denying Warrington's proposed instructions on her other tort claims?
¶13 Warrington argues the District Court erred by concluding she did not establish a requisite "special relationship," Story I , 242 Mont. at 451, 791 P.2d at 776, to support a tort claim for breach of the covenant of good faith and fair dealing.
¶14 Generally, a breach of contract claim gives rise only to expectancy damages. Section 27-1-311, MCA; see also Arrowhead Sch. Dist. No. 75 , ¶ 20 ; Riverview Homes II, Ltd. v. Canton , 2001 MT 309, ¶ 24, 307 Mont. 517, 38 P.3d 848 ; Conagra, Inc. v. Nierenberg , 2000 MT 213, ¶ 69, 301 Mont. 55, 7 P.3d 369 ; Textana, Inc. v. Klabzuba Oil & Gas , 2009 MT 401, ¶ 52, 353 Mont. 442, 222 P.3d 580 ; McEwen v. MCR, LLC , 2012 MT 319, ¶ 65, 368 Mont. 38, 291 P.3d 1253 ; Story I , 242 Mont. at 450, 791 P.2d at 776. Although "every contract, regardless of type, contains an implied covenant of good faith and fair dealing," a breach of that covenant is generally only "a breach of the contract." Story I , 242 Mont. at 450, 791 P.2d at 775. Accordingly, in ordinary contract cases, only contract damages are recoverable. Story I , 242 Mont. at 450, 791 P.2d at 775. However, we have previously recognized an "exceptional circumstance[ ]" when tort damages can be recovered "in contracts involving special relationships which are not otherwise controlled by specific statutory provisions." Story I , 242 Mont. at 451, 791 P.2d at 776.
¶15 To demonstrate the existence of a contract involving a "special relationship," a party must prove five elements: first, that the parties are in "inherently unequal bargaining positions"; second, "the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection"; third, "ordinary contract damages" would not allow adequate recovery, ***439 because "they do not require the party in the superior position to account for its actions, and [ ] they do not make the inferior party whole"; fourth, "one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform"; and last, "the other party is aware of this vulnerability." Story I , 242 Mont. at 451, 791 P.2d at 776 (quoting Wallis v. Superior Ct. , 160 Cal. App. 3d 1109, 1118, 207 Cal.Rptr. 123 (Cal. 1984) ) (internal quotation marks omitted). The five elements are conjunctive, and thus the failure to prove one defeats the entire claim. Story I , 242 Mont. at 451, 791 P.2d at 776.[1]
¶16 Wallis , on which this Court relied in Story I , 242 Mont. at 451, 791 P.2d at 776, involved a contract that required the employer to pay a monthly annuity payment to former employees laid off during a factory closing, but which the employer unilaterally rescinded after paying for two years. The California Court of Appeals considered the following asserted facts to be relevant to its determination that an employer breached the covenant of good faith and fair dealing in a contract that involved a special relationship:
*375 (1) the contract entered into between plaintiff and defendant contained an implied covenant of good faith and fair dealing; (2) plaintiff and defendant entered into the contract shortly after plaintiff learned his employment was to be terminated; (3) plaintiff had worked for defendant over 30 years, was 55 years of age, did not have any work skills outside furniture manufacture, and was not eligible for his accrued pension benefits for approximately 10 more years, when he would turn 65; (4) the parties were not in equal bargaining positions, defendant dictated the terms of the contract, plaintiff had no option but to sign the contract as defendant dictated; (5) because of his financial insecurity, his age, and his lack of work skills, plaintiff was in a position where he had to trust defendant; (6) defendant knew of plaintiff's precarious financial position, his age, and his lack of other work skills and knew that he relied on them for financial security ...
Wallis , 160 Cal. App. 3d at 1115-16, 207 Cal.Rptr. 123.
¶17 Under the element of unequal bargaining power, courts will consider factors such as the plaintiff's income, expenses, and skills that ***440 might make her employable in a different job or profession. See Wallis , 160 Cal. App. 3d at 1119, 207 Cal.Rptr. 123 ; see also Silberg v. Cal. Life Ins. Co. , 11 Cal.3d 452, 113 Cal.Rptr. 711, 521 P.2d 1103, 1109 (1974). In this regard, Warrington's circumstances were quite different than the employee at issue in Wallis . At the time Warrington applied with the Clinic, she had been employed at Benefis for 22 years, working in a variety of positions with increasing responsibilities, including management. Her education and experience in the healthcare industry made her employable elsewhere: she was qualified and hired for the Clinic position, found temporary employment within 10 days after the Clinic breached her employment contract, and then transitioned to a permanent position with the Montana State Fund in Helena. Warrington left her longstanding employment with Benefis for a higher paying job at the Clinic. Thus, Warrington was not in the kind of "precarious financial position" as the employee in Wallis , who was 10 years from retirement when laid off, did not have work skills outside furniture manufacture, relied upon the monthly check from his former employer as his only income, had not been offered further employment with the company, and signed a covenant not to compete with his former employer. Wallis , 160 Cal. App. 3d at 1113, 1115-16, 207 Cal.Rptr. 123. Further, Warrington's contract was not for what was essentially unemployment compensation in Wallis , but for a higher paying job, one that she voluntarily sought. As the District Court reasoned, this weighed against a finding of unequal bargaining power because, "when she negotiated this contract, she was safely employed at an existing job." She wanted the Clinic job because it "paid more," had "more challenging responsibilities," and "carried more prestige." Warrington had not signed a non-compete agreement like the employee signed in Wallis , and, as cited by the District Court, on the basis of the market economy, was able to demand and obtain "a very high price" for providing her services to the Clinic. Warrington was not faced with "no option but to sign the contract as defendant dictated," because she had the choice to accept or decline the new employment position and keep her current employment, in contrast to the employee in Wallis . Wallis , 160 Cal. App. 3d at 1113, 1116, 207 Cal.Rptr. 123.
¶18 Regarding the element of a non-profit motivation and peace of mind, the District Court noted the reasoning in Wallis that the contract must fulfill noncommercial purposes, such as the security provided by a life insurance policy despite the consumer's knowledge that she may "never see[ ] a monetary payback on the premiums paid." The Wallis court considered whether the contract's purpose was to "obtain a commercial advantage," as opposed to protecting the party "against the risks of accidental losses, including the mental distress ***441 which might follow from the losses" and to obtain "peace of mind and security." Wallis , 160 Cal. App. 3d at 1117, 207 Cal.Rptr. 123 (citations omitted). The District Court noted that Warrington testified by affidavit that "the reason I signed and entered into that contract with the Great Falls Clinic was to advance my career in the healthcare field. I also entered *376 into that contract because the Clinic promised to pay me more money than I was making at the time at Benefis Hospital." The District Court concluded these statements demonstrated Warrington's primary purpose for entering the contract was to "obtain a commercial advantage." See Wallis , 160 Cal. App. 3d at 1117, 207 Cal.Rptr. 123.
¶19 "If substantial evidence is not presented in support of each and all of the essential elements, the court shall direct there is no special relationship." Story I , 242 Mont. at 451, 791 P.2d at 776 ; see also Monroe v. Cogswell Agency , 2010 MT 134, ¶ 34, 356 Mont. 417, 234 P.3d 79 (a failure of proof concerning an essential element of a claim "makes judgment appropriate as a matter of law."). Given this record, we cannot conclude the District Court erred in holding that the "special relationship" factors of unequal bargaining power and non-profit motivation were not established. Absent a showing on those two elements, the Clinic was entitled to judgment as a matter of law, and the entry of summary judgment on the claim was not error.
¶20 In a brief, related argument, Warrington contends the District Court erred when it failed to instruct the jury on her tort claims arising out of the breach of the covenant of good faith and fair dealing, and those she sought to add to her complaint, including intentional and negligent infliction of emotional distress, negligence, wrongful failure to employ, and punitive damages. This argument is related to the long procedural history of the case.
¶21 The District Court determined in its December 22, 2017 order on summary judgment that the only issue to be tried was the damages owed to Warrington for the Clinic's breach of contract (and any contract-based breach of the implied covenant), and that Warrington's then-pled tort claims would not be considered. The court reiterated this ruling in a telephone conference with the parties on January 18, 2018, explaining Warrington's special relationship claim had been dismissed by summary judgment. Six months later, shortly before trial, Warrington sought leave to amend her complaint to plead additional tort claims, which the District Court denied.
¶22 Warrington frames her argument as instructional error, which we typically review for abuse of discretion, Cechovic , 273 Mont. at 116, 902 P.2d at 527, and to determine if "the jury instructions in their entirety state the applicable law of the case." Peterson , ¶ 22. However, ***442 the issue is more accurately about the District Court's rulings on the motion to amend and on Warrington's tort claim for breach of the implied covenant, the denial of which is affirmed above. Montana statute expressly prohibits recovery of emotional distress damages in a contract action. Section 27-1-310, MCA. The District Court properly determined that the only claim to be tried was the damages for breach of contract and, therefore, there was no instructional error for failing to instruct the jury on further tort claims.
¶23 2. Did the District Court err by admitting evidence of the Clinic's liability and Warrington's emotional distress?
¶24 On cross appeal, the Clinic argues the District Court abused its discretion and committed reversible error when it allowed Warrington to present evidence regarding the Clinic's contract liability and her emotional distress. The Clinic argues that, despite a pre-trial ruling, upheld by this Court by Writ of Supervisory Control, that the Clinic had breached the contract, the District Court nonetheless permitted Warrington to introduce liability evidence about the breach that served only to prejudice the Clinic in the eyes of the jury, as did evidence the District Court permitted Warrington to introduce regarding her emotional distress, when distress claims were not before the jury.
¶25 Montana Rule of Evidence 104(a) provides that "the admissibility of evidence shall be determined by the court." Moreover, "[a] district court has broad discretion when determining the relevance and admissibility of evidence," thus this determination is reviewed for an abuse of discretion. State v. Given , 2015 MT 273, ¶ 23, 381 Mont. 115, 359 P.3d 90.
¶26 This case did not involve a simple transaction, and the District Court faced *377 challenges in managing the case in a manner that would permit damages for the Clinic's breach of its executory employment contract to be properly evaluated. Significant issues of fact remained about the harm suffered by Warrington, which the District Court believed necessitated evidence and explanation about context. Noting that the parties' contract referenced a future "successful career" Warrington would have with the Clinic, but also subjected her to six-month probationary period, the District Court reasoned:
The parties dispute what full performance by the Clinic would have looked like.... Genuine fact disputes remain about how the situation would have unfolded if the Clinic had not breached the contract on October 24.... Jurors who hear all of this need not necessarily believe ... that Ms. Warrington would not have lasted through her first day.... This will require deciding whether the Clinic would have fired Ms. Warrington at all, when it would have ***443 done so, and how much she would have earned before it happened.
The court further ruled that, although the Clinic was entitled to summary judgment on the special relationship issue that precluded tort damages, the jury would determine whether the Clinic "breached the implied covenant of good faith and fair dealing.... Therefore, if the jury does conclude that the Clinic breached the implied covenant, Ms. Warrington can recover her contract expectancy damages but not tort damages."
¶27 Consequently, evidence of Warrington's expectations, had the Clinic not breached the contract, and the fallout from the breach, including Warrington's concerns over the impact of the loss upon her reputation and employability at her age, and the steps she took to find comparable work, involving relocating to another city, was potentially relevant to the determination of expectancy damages, which is the amount reasonably expected to put the non-breaching party in the position it would have been absent the breach. Section 27-1-311, MCA; see also Arrowhead Sch. Dist. No. 75 , ¶ 20 ; Riverview Homes II, Ltd. , ¶ 24 ; Conagra, Inc. , ¶ 69 ; Textana, Inc., ¶ 52 ; McEwen , ¶ 65. Thus, the District Court was tasked with assessing the evidence offered in these regards, and applying the rules of evidence in the exercise of its discretion.
¶28 The District Court also gave some latitude for Plaintiff's counsel to, in the District Court's words, "personalize" Warrington. Unfortunately, Plaintiff's counsel, given an inch, attempted to take a mile, and, in response to the Clinic's continuing objections, the District Court admonished: "You can't get emotional distress damages ... Over and over and over again, this is what she did in the Army. She was a nurse for babies.... She's saved people's lives. She's saved [her husband's] life many times. It's not what this case is about. It's not a tort case. It's a contract case...."
¶29 The District Court may have permitted Plaintiff's counsel to go too far, but our review of the record leads us to the conclusion that any error did not ultimately result in prejudice to the Clinic requiring reversal. The court admonished Plaintiff's counsel to stop overreaching, and instructed the jury that Warrington could only recover contract expectancy damages, that she could not be awarded damages for emotional distress, and that the Clinic could not be assessed punitive damages. The District Court had broad discretion to admit evidence, and in a case involving significant personal expectancy damages for which evidence about the consequences of the breach upon Warrington was potentially relevant, as discussed above, we cannot conclude the District Court's evidentiary rulings constituted reversible error.
***444 ¶30 3. Did the District Court err by denying the Clinic's motion for judgment as a matter of law regarding Warrington's damages?
¶31 The Clinic moved for a directed verdict on the issue of Warrington's damage computation, which included claims for mortgage interest and for travel and mileage expenses. The District Court denied the motion. The Clinic argues there was insufficient evidence to prove the Clinic caused damages relating to Warrington's mortgage costs and travel expenses, nor were these costs reasonably expected to arise out of the breach of an employment contract.
*378 ¶32 We have explained that there are two types of contract damages-natural damages and contemplated damages. McEwen , ¶ 59. "Natural damages represent the direct and natural result of the contract breach. Contemplated damages fall within the contemplation of the parties when they entered into the contract." McEwen , ¶ 59 (internal citations and quotations omitted). A non-breaching party injured by another's breach of contract has a duty to mitigate her damages. Arrowhead , ¶ 20 n.3 ; Bitterroot Int'l Sys. v. Western Star Trucks, Inc. , 2007 MT 48, ¶ 62, 336 Mont. 145, 153 P.3d 627. We have held that the expenses incurred by a non-breaching party in an effort to secure other employment after a breach of contract are recoverable, and that procuring other employment is part of damage mitigation. Wyatt v. Sch. Dist. , 148 Mont. 83, 90-91, 417 P.2d 221, 225 (1966).
¶33 Warrington found part-time employment within ten days of the Clinic's breach, but to find full-time work in her healthcare career field, comparable to her previous position with Benefis, she relocated from Great Falls, taking a position in Helena. Warrington argued the Clinic should have reasonably contemplated this employment dilemma at the time of contracting, knowing that Warrington had worked exclusively in the healthcare industry for many years; that its facility was one of two hospital-based healthcare providers in Great Falls; and that Warrington would have to leave Great Falls to pursue her career track if her employment with the Clinic fell through and she was ineligible for re-hire at Benefis. Warrington's move to Helena could have been determined by the jury to be proper mitigation of her damages, in which she also incurred costs she otherwise would not have incurred had the Clinic not breached the employment contract, including a mortgage payment on her house in Helena, and commuting expenses between Great Falls and Helena. They were thus potentially recoverable consequential damages necessary to put Warrington in the position she would have been had the Clinic not breached the employment contract.
¶34 Judgment as a matter of law is appropriate only when "there ***445 is a complete lack of evidence that would justify submitting an issue to the jury." Patch , ¶ 24. Because Warrington presented sufficient evidence that her damages were appropriate and reasonably incurred, the District Court properly denied the motion.
¶35 4. Did the District Court err by failing to rule and instruct the jury that the contract was for a one-year term pursuant to § 39-2-602(1), MCA ?
¶36 Citing § 39-2-602(1), MCA, and Warrington's contractually-agreed annual salary of $ 78,500, the Clinic argues the District Court "should have ordered the employment contract was a contract for one year and instructed the jury as such." That statute states, in pertinent part:
A servant is presumed to have been hired for such length of time as the parties adopt for the estimation of wages. A hiring at a yearly rate is presumed to be for 1 year; a hiring at a daily rate, for 1 day; a hiring by piecework, for no specified term.
Section 39-2-602(1), MCA. The Clinic asserts this provision "required the jury to be instructed Warrington's written employment contract was a one-year contract," as a matter of law.
¶37 The Clinic over-applies the statute. The provision is a rebuttable evidentiary presumption that can guide resolution of a dispute over the term or length of employment. Here, larger issues were in play, including genuine issues of material fact about the potential length of Warrington's employment, and it would have been inappropriate for the District Court to have instructed the jury that the term of the contract between the Clinic and Warrington was one year, and essentially determined all of these issues as a matter of law. We find no error.
¶38 Affirmed.
We concur:
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.
BETH BAKER, J.

The District Court ruled that Warrington failed to prove at least two of the five elements-unequal bargaining power and nonprofit motivation-and thus did not consider the other Story I elements. We likewise limit our review to those two elements.